**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMRES CORPORATION, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 2:24-cv-00771-MAK |
| | : | |
| MICHAEL MUFFOLETTO and | : | |
| REVOLUTION MORTGAGE, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW OF DEFENDANTS, MICHAEL MUFFOLETTO AND
REVOLUTION MORTGAGE, IN SUPPORT OF THEIR MOTION TO
<u>DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

Defendants, Michael Muffoletto ("Muffoletto") and Revolution Mortgage ("Revolution") (collectively, "Defendants"), by and through their counsel, hereby file this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint, as follows:

**I.      <u>PROCEDURAL HISTORY</u>**

Plaintiff, Amres Corporation, initiated this civil action on August 4, 2023, via Writ of Summons. The Writ of Summons is attached as *Exhibit A*. As is typical, the Writ of Summons does not identify the claims being brought or the factual basis for such claims. Having failed to attempt and/or effectuate service, Plaintiff reissued the Writ of Summons on September 20, 2023.

Thereafter, on October 6, 2023, Plaintiff filed an Affidavit of Service falsely representing that the Writ of Summons had been properly served on the out-of-state Defendants pursuant to Pa. R. Civ. P. 403. The Affidavit of Service is attached as *Exhibit B*. The Affidavit of Service fails to attest that the mailings sought a return receipt, also known as a "green card," signed by the Defendants. The tracking information provided fails to identify the delivery addresses, to whom the mailings were delivered or whether they required a signature upon delivery. *See* Exhibit B.

On October 12, 2023, Plaintiff filed its original Complaint asserting claims of fraud, breach of contract and tortious interference. Instead of correcting the glaring service issue, Plaintiff threatened to seek a default judgment, claiming to have served a Notice of Praecipe to Enter Judgment by Default. Despite having no obligation to respond to the Complaint due to lack of proper service, Defendants filed Preliminary Objections on December 6, 2023, raising multiple issues including lack of service to prevent Plaintiff from taking an improper default judgment.

Plaintiff still took no action to effectuate service, instead filing a First Amended Complaint on December 27, 2023. As with the original Complaint, the First Amended Complaint also asserted claims for fraud (Count I), breach of contract (Count II) and tortious interference (Count III). Once again, to avoid entry of an improper default judgment, Defendants filed Preliminary Objections on multiple grounds, including lack of proper service. Plaintiff still failed to effectuate service.

On February 6, 2024, Plaintiff filed its Second Amended Complaint jettisoning the fraud and tortious interference claims. The Second Amended Complaint is attached as *Exhibit C*. Instead, the Second Amended Complaint asserted claims for: (1) breach of fiduciary duty (Count I); (2) breach of contract against Muffoletto (Count II); (3) breach of contract against Revolution (Count III); (4) conversion (Count IV); and (5) civil conspiracy (Count V). Because the cycle of amended pleadings demonstrated Plaintiff's refusal to acknowledge defective service, Defendants resolved the service issue by accepting service through their undersigned counsel on February 21, 2024. The Acceptance of Service is attached as *Exhibit D*. Thereafter, on February 22, 2024, Defendants properly removed the case to this Court on the grounds of diversity jurisdiction. *See ECF No. 1*.

II.     **FACTUAL HISTORY**

Muffoletto is a former employee of Plaintiff. *See* Exhibit C, ¶ 2. Plaintiff alleges that it terminated Muffoletto. *See* Exhibit C, ¶ 26. On September 28, 2023, Muffoletto sued Plaintiff in

the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Florida Action"). The Complaint in the Florida Action is attached as *Exhibit E*. Muffoletto alleges Plaintiff withheld salary, wages and bonuses that were promised to him in a written employment agreement. Notably, the Complaint in the Florida Action was filed more than two weeks before Plaintiff filed its Complaint in the instant case and a day before Plaintiff mailed the Writ of Summons to the Defendants in an improper attempt to effectuate service of original process. Thereafter, the Court in the Florida Action denied Amres's Motion to Dismiss or Transfer Venue. The Order denying Amres's Motion to Dismiss or Transfer Venue is attached as *Exhibit F*.

Against Muffoletto, Plaintiff's Amended Complaint alleges that he breached his fiduciary duty, breached the terms of one or more contracts, converted Plaintiff's property and conspired with Revolution to harm Plaintiff. *See* Exhibit C. For example, Amres alleges that "Muffoletto, acted in utter disregard of his non solicitation, non compete agreements, and his employment agreement with Amres . . ." *See* Exhibit C, ¶ 20. Despite not attaching Muffoletto's employment agreement in violation of Pa. R. Civ. P. 1019(i), it expressly disclaims any "express or implied agreements" that are contrary to the terms. The employment agreement is attached as *Exhibit G*.[1] Finally, without citing any criminal conduct or violations of criminal statutes, Plaintiff

---

[1] "Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291 (3d Cir. 2014) (quoting, *Pryor v. Nat'l Collegiate Athl. Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). Such documents may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting, *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996)). Therefore, because Plaintiff claims that Muffoletto breached his employment agreement, Defendants' attachment, and the Court's consideration, thereof is appropriate. Similarly, Plaintiff's breach of contract claim based upon Revolution Mortgage's alleged breach of the NDA also supports Defendants' attachment.

scandalously refers to Muffoletto's conduct as "illegal" in a thinly-veiled attempt to prejudice him in the eyes of the Court and, ultimately, a jury.

Against Revolution, Plaintiff claims that it is vicariously liable for Muffoletto's alleged breach of fiduciary duty. *See* Exhibit C, ¶¶ 28-35. In Count II, Plaintiff further offers a threadbare allegation that Revolution should be held liable for breaching a Non-Disclosure Agreement ("NDA") that is neither attached to, nor described in, the Second Amended Complaint. *See* Exhibit C, ¶¶ 24, 48. Like Muffoletto's employment agreement, Plaintiff did not attach the NDA and, as such, Defendants have attached it as *Exhibit H*. Moreover, despite captioning Count III as "breach of contract," it is merely a rebranding of Plaintiff's claim of tortious interference that was pled in the original and First Amended Complaints. As with Muffoletto, Counts IV and V allege claims for conversion and civil conspiracy, respectively, against Revolution.

Defendants hereby move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), in whole or in part, because the Second Amended Complaint is still replete with fatal defects even though Plaintiff has now had two opportunities to correct them. Defendants also move pursuant to Fed. R. Civ. P. 12(f) to strike scandalous and impertinent matter, including the allegations of "illegal conduct" and conduct of an unidentified non-party "LLC." *See* Exhibit C, ¶ 44.

### III. <u>QUESTIONS PRESENTED</u>

 A. Should Plaintiff's claims against Muffoletto be dismissed because Plaintiff has failed to raise them as compulsory counterclaims in the Florida Action?

  *Suggested Answer: Yes.*

 B. Should Plaintiff's breach of contract claims against Muffoletto and Revolution contained in Counts II and III be dismissed for failure to state a claim?

  *Suggested Answer: Yes.*

 C. Should Count III of the Second Amended Complaint be dismissed to the extent that it purports to assert a claim for tortious interference against Revolution?

*Suggested Answer:    Yes.*

**D.**    Should Plaintiff's claim for conversion set forth in Count IV of the Second Amended Complaint be dismissed for failure to state a claim upon which relief may be granted?

*Suggested Answer:    Yes.*

**E.**    Should Plaintiff's claim for civil conspiracy set forth in Count V of the Second Amended Complaint be dismissed for failure to state a claim upon which relief may be granted?

*Suggested Answer:    Yes.*

**F.**    Should Plaintiff's claims against Muffoletto relating to promises made prior to signing his employment agreement be dismissed because such claims are predicated on alleged promises that are barred as a matter of law by the parol evidence rule?

*Suggested Answer:    Yes.*

**G.**    Should Plaintiff's demand for punitive damages in Count III for Revolution's purported breach of contract be stricken where such damages are not available as a matter of law?

*Suggested Answer:    Yes.*

**H.**    Should Plaintiff's demand for attorney's fees in Counts III, IV and V of the Second Amended Complaint be stricken because attorney's fees are not recoverable as a quantum of damages?

*Suggested Answer:    Yes.*

**I.**    Should Plaintiff's characterization of Muffoletto's conduct as "illegal" despite asserting no criminal conduct or violations of criminal statutes and reference to the conduct of a non-party LLC be stricken as scandalous and impertinent pursuant to Fed. R. Civ. P. 12(f)?

*Suggested Answer:    Yes.*

## IV.    <u>THE APPLICABLE LEGAL STANDARDS</u>

### A.    <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "detailed factual allegations, . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that offers nothing more than "'labels and conclusions'[,] . . . 'a formulaic recitation of the elements of a cause of action' . . . [or] 'naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and should be dismissed. *Id. at 678 (citing, Twombly*, 550 U.S. at 557). Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556 (retiring the "no set of facts" test of *Conley v. Gibson*, 355 U.S. 41 (1957)).

Under the *Twombly/Iqbal* paradigm, a Court must engage in a two-step inquiry to determine the sufficiency of the factual matter alleged. The Court must disregard allegations that constitute unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events, none of which are entitled to the assumption of truth. *See Twombly*, 550 U.S. at 664 (*quoting, Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663.

The Court then must identify the non-conclusory, well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 664. If the factual allegations are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding of no liability. *See Id.*

**B.**     **Motion to Strike Pursuant to Rule 12(f)**

Pursuant to Fed. R. Civ. P. 12(f), the "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Zaloga v. Provident Life and Accident Ins. Co. of America*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) (*quoting McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

A motion to strike is based entirely on the pleadings. *Id*. at 633 (*citing Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007)). The court should "consider the liberal pleading standards of Rule 8 and the lack of a developed factual record at this early stage of litigation." *Id*. at 633 (*citing, Hanover*, 619 F. Supp. 2d at 133; *United States v. Consolidation Coal Co*., 1991 WL 333694, *1 (W.D. Pa. Jul. 5, 1991) (*citing, Kelley v. Thomas Solvent Co*., 714 F. Supp. 1439, 1442 (W.D. Mich. 1989)). However, a court should strike material that "bears no possible relationship to the controversy and may cause prejudice to one of the parties." *Id*. at 633 (*citing, Hanover*, 619 F. Supp. 2d at 133; *Miller v. Group Voyagers, Inc.*, 912 F. Supp. 164, 168 (E.D. Pa. 1996)).

**V.     LEGAL ARGUMENT**

**A.     Plaintiff's Claims Against Muffoletto Should Be Dismissed Because Plaintiff Has Failed to Raise Them as Compulsory Counterclaims in the Florida Action**

Plaintiff's claims against Muffoletto should be dismissed because they cannot be brought in this case. Prior to the filing of its original Complaint in this case, Plaintiff was sued by Muffoletto in Florida for failure to pay him wages and commissions owed to him in connection with his employment at Plaintiff. *See* Exhibit D. Because the claims Plaintiff is attempting to assert against Muffoletto in this case must be asserted as a compulsory counterclaim in the Florida Action, the

Court lacks jurisdiction over the subject matter of such claims, warranting dismissal. *See* Pa. R. Civ. P. 1028(a)(1) (dismissal appropriate where the Court lacks subject matter jurisdiction).

Florida's rule regarding compulsory counterclaims provides in relevant part:

> A pleading **must** state as a counterclaim **any claim which at the time of serving the pleading the pleader has against any opposing party**, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Fla. R. Civ. P. 1.170(a) (emphasis added). Under Florida law, "A compulsory counterclaim is waived unless it is served in the answer." Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., 807 So. 2d 669, 672 (Fla. App. 2001) (*citing*, Lawyers Title Ins. Corp. v. Little River Bank & Trust Co., 228 So. 2d 412, 414 (Fla. App. 1969)).

Here, Muffoletto's claims in the Florida Action relate to his employment by Plaintiff. *See* Exhibit C. Plaintiff's counterclaims against Muffoletto relate to the same facts and circumstances – his employment by Plaintiff. *See* Exhibit D. Plaintiff had its claims when it was served with the Florida Action, so they are compulsory counterclaims that must be brought in the Florida Action.

Florida law requires Plaintiff to plead **all its claims** relating to Muffoletto's employment as part of Plaintiff's Answer in the Florida Action. Accordingly, Plaintiff's claims against Muffoletto should be dismissed from this litigation because it cannot simultaneously bring claims in this Court that are compulsory counterclaims in the Florida Action. This is especially true since Plaintiff has waived those claims by its failing to bring them in the Florida action.

Moreover, should Plaintiff assert its mandatory counterclaim in the Florida Action, those claims would then become barred by *lis pendens* in this lawsuit because the claims, parties and relief requested would be identical. *See Boardakan Rest. LLC v. Atl. Pier Assocs., LLC*, 2013 U.S. Dist. LEXIS 143673, *20 (E.D. Pa. Oct. 2, 2013) (*citing*, *Richner v. McCance*, 13 A.3d 950, 957-

58 (Pa. Super. 2011)). While Plaintiff will argue that it won the "race to the courthouse," it merely filed a Writ of Summons that did not assert any specific claims against the Defendants. Muffoletto filed the Florida Action via Complaint on September 28, 2023, even before Plaintiff's ill-fated attempt to serve the Writ of Summons on September 29, 2023. *See* Exhibit B; Exhibit D. Plaintiff did not file its original Complaint until October 12, 2023, two weeks after initiation of the Florida Action. By being the first to file a complaint setting forth actual legal claims, Muffoletto was the first to file.

**B.** **Plaintiff's Breach of Contract Claims Against Muffoletto Revolution For Alleged Breach of the NDA Should Be Dismissed for Failure to State a Claim**

Because they fail to state a claim upon which relief may be granted, Counts II and III of the Second Amended Complaint purporting to assert a claims for breach of contract against Muffoletto and Revolution, should be dismissed. In Pennsylvania, a "cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Corestates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (*citing Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. 1976)). "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *Id*. at 1058 (*citing*, *Snaith v. Snaith*, 422 A.2d 1379, 1382 (Pa. Super. 1980)).

Plaintiff's Second Amended Complaint is entirely devoid of facts to support its claim for breach of contract against Muffoletto. Plaintiff vaguely asserts that "Muffoletto breached his agreements with Amres, including the employment agreement, non solicitation and non compete agreements." *See* Exhibit C, ¶ 37. However, Plaintiff has failed to identify the essential terms of these three agreements that Muffoletto allegedly breached. Because Plaintiff cannot support its

breach of contract claim against Muffoletto with "threadbare recitals" of the elements and conclusory statements, it fails as a matter of law. *See Iqbal*, 556 U.S. at 663.

With respect to Revolution, Plaintiff generally asserts that it breached the April 2023 NDA. *See* Exhibit C, ¶¶ 24, 48. Despite being a party to the NDA, Plaintiff neither attached it to the Second Amended Complaint, nor identified the essential terms thereof that Revolution breached. Rather, Plaintiff merely excuses this failure by stating that Revolution possesses a copy. *See* Exhibit C, ¶ 48. Notably, Plaintiff does not claim that it does not possess a copy. Nor would its lack of a copy of the NDA excuse it from pleading the essential terms and facts supporting its claim for breach.

Moreover, Revolution's mere possession of the NDA fails to provide it with any notice as to what essential terms it allegedly breached. While the NDA addresses the protection of confidential information, Plaintiff does not allege that Revolution improperly disclosed any confidential information. *See* Exhibit H. Because Plaintiff is a party to the NDA, a copy of which is attached hereto, its failure to properly plead a breach of contract claim is inexcusable. *See* Exhibit H. Therefore, Count III should be dismissed.

**C.**      **Count III of the Second Amended Complaint Should Be Dismissed to the Extent That It Purports to Assert a Claim for Tortious Interference**

Despite being branded as a breach of contract claim, the allegations of Count III remain largely similar to the allegations of Count III of the original and First Amended Complaint when the count was entitled "Torturous [sic] Interference." However, to the extent that Plaintiff is attempting to disguise a claim for tortious interference as a breach of contract claim, it should be dismissed for failure to state a claim.

Despite already being the subject of two sets of Preliminary Objections, Plaintiff has still failed to plead the requisite elements of tortious interference and supporting facts. The elements necessary to establish the tort of interference with contractual rights are:

(1)     the existence of an actual or prospective relationship between the complainant and a third party;

(2)     purposeful action by the defendant specifically intended to harm the existing relation or to prevent a prospective relation from occurring;

(3)     the absence of a privilege or justification on the part of the defendant; and

(4)     actual damage resulting from the defendant's conduct.

*Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979); *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 665 (Pa. Super. 2010). *See also*, *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 384 (3d Cir. 2004). The Amended Complaint fails to assert any facts to support these elements.

First, Plaintiff has failed to establish the existence of an actual or prospective relationship with a third party. Plaintiff pleads only that Revolution "knew of Muffoletto's agreements with Amres but nevertheless employed him" and "intentionally allowed him" to violate the terms of Muffoletto's agreements with Plaintiff. *See* Exhibit C, ¶ 43. Later, Plaintiff merely notes that Revolution only "knew or should have known" that Muffoletto was Plaintiff's employee. *See* Exhibit C, ¶ 47. In fact, the only prospective contractual relationship alleged is between Plaintiff an individual named Roman Fogel, who "was, and ***still is*** working with Amres." *See* Exhibit C, ¶ 27 (emphasis added). Because Mr. Fogel remains Plaintiff's employee, it suffered no damages.

Second, Plaintiff does not allege that Revolution "specifically intended to harm" Plaintiff's relationships with any third party. Nor is there any allegation that Revolution's alleged conduct was neither privileged nor justified.

Finally, Plaintiff has failed to plead any actual damages resulting from Revolution's alleged conduct. Again, the only prospective contractual relationship identified in the Third Amended Complaint is with Roman Fogel who was and remains Plaintiff's employee. Because Plaintiff freely admits that Revolution did not hire Mr. Fogel, Plaintiff has failed to establish that it suffered any damages by reason of any alleged contact between Revolution and Mr. Fogel. The absence of any such allegation renders baseless Plaintiff's tortious interference claim. Thus, Plaintiff's tortious interference with prospective contract claim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### D. <u>Plaintiff's Claim for Conversion Should Be Dismissed</u>

Plaintiff has asserted a vague and improper claim for conversion against both of the Defendants in Count IV of the Second Amended Complaint. Under Pennsylvania law, conversion is a tort by which a defendant deprives the plaintiff of its right to a chattel or interferes with the plaintiff's use or possession of a chattel without plaintiff's consent and without lawful justification. *See The Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 860 A.2d 1038, 1043 (Pa. Super. 2004), *rev'd on other grounds*, 905 A.2d 462 (Pa. 2006). An essential element of a claim for conversion is that the plaintiff must establish that he or she had actual or constructive possession of a chattel at the time of the alleged conversion. *Id.* at 1043. *See also, Thermacon Enviro Systems, Inc. v. GMH Assoc. of America, Inc.*, 2001 Phila. Ct. Com. Pl. Lexis 74, *10 (2001).

First, while Plaintiff purports to assert is conversion claim against "all defendants," there are absolutely no allegations contained in Count IV, or anywhere else, that would support a conversion claim against Revolution. While Plaintiff alleges that Revolution hired ten of its employees, employees are humans, not chattel. Nor can they be "possessed" by Revolution. Therefore, Plaintiff's conversion claim against Revolution fails as a matter of law.

Plaintiff's claim for conversion against Muffoletto also fails as a matter of law. Plaintiff alleges that Muffoletto allegedly was paid a large salary but failed to justify it and that he worked against Plaintiff's interests by driving employees to Revolution. *See* Exhibit C, ¶ 51. However, a claim for conversion cannot lie unless Plaintiff did not consent. *See The Ins. Adjustment Bureau*, 860 A.2d at 1043. In this case, Plaintiff voluntarily paid Muffoletto the salary it now claims was unlawfully converted. The voluntary payment of Muffoletto's salary precludes Plaintiff's claim for conversion.

Moreover, Plaintiff also admits that it terminated Muffoletto before Revolution allegedly hired ten of Plaintiff's employees. *See* Exhibit C, ¶ 26. Thus, any argument that Muffoletto is liable for conversion because he was accepting a salary from Plaintiff while actively driving Plaintiff's employees to Revolution is baseless.

### E. Plaintiff's Civil Conspiracy Claim Should be Dismissed

Count V of the Second Amended Complaint purports to assert a claim against both Defendants for civil conspiracy. *See* Exhibit C, ¶¶ 55-61. The essential elements of civil conspiracy are: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in or for an unlawful purpose, and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008). Proof of malice is also an essential element of a cause of action for civil conspiracy. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1972). "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Thompson Coal*, 412 A.2d at 473 (*citing*, *Fife v. Great Atlantic and Pacific Tea Co.*, 52 A.2d 24, 39 (Pa. 1947)).

Moreover, a civil conspiracy claim cannot stand where the plaintiff alleges that an agent conspired with his principal. *See Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. 2006) (*citing, Grose v. Proctor & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. 2005)). Plaintiff's civil conspiracy claim is based entirely on the allegation that Muffoletto and Revolution acted together to recruit and employ former employees of Plaintiff. *See* Exhibit C, ¶¶ 56-57. Here, Plaintiff freely alleges that Revolution hired these individuals "only after Michael Muffoletto was terminated . . ." *See* Exhibit C, ¶ 26. Moreover, Plaintiff asserts that Muffoletto was essentially a Revolution employee both before and after these individuals allegedly began working for Revolution. *See* Exhibit C, ¶¶ 18, 21, 22. Because employees are agents of their employer, Defendants cannot be held liable for civil conspiracy because, as a matter of law, an agent cannot conspire with his principal. Thus, Count V of the Third Amended Complaint should be dismissed.

**F. Plaintiff's Claim Against Muffoletto Relating to Promises Made Before Signing the Employment Agreement Fails As a Matter of Law**

Plaintiff alleges that, before he was hired, Muffoletto made promises and representations to Plaintiff that he would fulfill if he was offered employment. *See* Exhibit C, ¶¶ 7, 14. Plaintiff's claim must be dismissed because any alleged promises, assuming they were made by Muffoletto, are barred as a matter of law by the parol evidence rule and the integration clause of the parties' employment contract. Under Pennsylvania law, an "integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Yocca v. Pittsburgh Steelers Sports, Inc.,* 854 A.2d 425, 436 (2004).

In the Second Amended Complaint, Plaintiff alleges that certain promises were made between Muffoletto and Plaintiff relating to what Muffoletto would do if he was hired by Plaintiff. Specifically, Amres alleges that "if hired [Muffoletto] would recruit and lead a sales force to net

14

over 3 million in monthly sales, and also that if hired he would work only for Amres but not for other entities at the same time." *See* Exhibit C, ¶ 7.

Reliance upon such alleged promises are barred by the integration clause of Amres' employment contract with Muffoletto. *See* Exhibit G, p. 2. Under the terms of his employment agreement, Plaintiff cannot rely on any such alleged promises because the employment agreement can be ended at any time and by any party. *See* Exhibit G, p. 2. According to Plaintiff, Muffoletto is an "at will" employee and his employment is not guaranteed for any specific period. *See* Exhibit G, p. 2. Plaintiff can terminate Muffoletto "at any time, without any notice, for any reason." *See* Exhibit G, p. 2. By that same token, Muffoletto is permitted to terminate the at-will employment relationship at any time and for any reason. *Dagostino v. Rogers*, 68 Pa. Super. 284, 288 (1917) ("Where a contract exists, of course, the conduct of the parties would be regulated by the terms of such contract but where the engagement is for an indefinite period the employer may discharge without cause and the employee may quit the service without assigning any reason for so doing").

Accordingly, Plaintiff cannot rely upon any promises that Muffoletto would reach any specific goals or benchmarks are unenforceable as a matter of law, including that he would "lead a sales force to net over 3 million in monthly sales" because such a promise would contradict the written terms of the contract - specifically Muffoletto's right to terminate the employment relationship at any time and for any reason. The Employment Agreement further states that changes to Muffoletto's employment that would alter his at-will employment "must be in writing and fully executed by both EMPLOYEE and one of the Executives." *See* Exhibit G, p. 2.

There is no signed writing in which Muffoletto and Plaintiff agreed that "if hired [Muffoletto] would recruit and lead a sales force to net over 3 million in monthly sales, and also that if hired he would work only for Amres but not for other entities at the same time." Therefore,

any "evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always  inadmissible to explain or vary the terms of the contract." *Yocca*, 854 A.2d at 436-37. There can be no reasonable reliance upon such an alleged promise by Amres because it is unenforceable as a matter of law. Accordingly, Count One of the Amended Complaint must be dismissed because, Amres is barred by the parol evidence rule from introducing evidence of any alleged conversations or promises that were not included in Muffoletto's written employment agreement with Plaintiff.

### G. Plaintiff's Demand for Punitive Damages in Count III For Revolution's Purported Breach of Contract Should Be Stricken

In the *ad damnum* clause of Count III of the Second Amended Complaint, Plaintiff includes a demand for punitive damages.  Count III asserts a claim for breach of contract against Revolution. *See* Exhibit C, ¶¶ 42-48.  However, "punitive damages are not a legally recoverable remedy for a breach of contract claim." *Collings v. State Farm Fire & Cas. Co.*, 2022 U.S. Dist. LEXIS 77931, \*12 (E.D. Pa. Apr. 28, 2022) (*citing, Dehart v. HomEq Servicing Corp.*, 679 Appx. 184, 189 (3d Cir. 2017)).   Therefore, Plaintiff's demand for punitive damages based upon Revolution's purported breach of contract should be stricken.

### H. Plaintiff's Demand for Attorney's Fees in Counts III, IV and V of the Second Amended Complaint Should Be Stricken

The *ad damnum* clauses of Counts III, IV and V all contain a demand for attorney's fees against Revolution as a quantum of damages. *See* Exhibit C. However, Plaintiff fails to support this demand with the required statutory or contractual authority.

 In Pennsylvania, each party is required to bear its own attorney's fees. Typically, a litigant is not entitled to recover attorney's fees absent a statute or contract between the parties providing that attorney's fees are recoverable. *See Chatham Comms., Inc. v. General Press Corporation*, 344

A.2d 837, 842 (Pa. 1975); *Merlino v. Delaware County*, 728 A.2d 949, 951 (Pa. Super. 1999). *See also*, *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs.*, 2006 U.S. Dist. LEXIS 51231, *14 (E.D. Pa. Jul. 14, 2006). This rule of law, more commonly known as the "American Rule," provides that a litigant cannot recover counsel fees from an adverse party in the absence of express statutory allowance, clear agreement by the parties or some other established exception. *See Id*. at *15 (*citing*, Merlino, 728 A.2d at 951). *See also*, *Chatham Comms.*, 344 A.2d at 842.

In this case, there is no statute or established law pursuant to which Plaintiff may recover attorney's fees. Nor is there any contract between Plaintiff and Revolution that would permit Plaintiff to recover attorney's fees. The only contract Plaintiff references, but does not attach, is the NDA. *See* Exhibit C, ¶¶ 24, 28. While the NDA contains a "Remedies" provision, it does not authorize an award of attorney's fees. *See* Exhibit H, § 10. Rather, it merely authorizes a party to seek "injunctive relief and any other remedies as may be available at law or in equity . . ." *See* Exhibit H, § 10. Because there exists no authorization under the law or contract, Plaintiff's demand for attorney's fees against Revolution must be stricken with prejudice.

I.     **The Scandalous and Impertinent Material Contained in the Second Amended Complaint Should Be Stricken Pursuant to Rule 12(f)**

The allegations contained in Plaintiff's Second Amended Complaint characterizing Muffoletto's conduct as "criminal" and as well as alleged breaches of common law and contract by an unidentified, non-party "LLC" should be stricken as immaterial, impertinent and highly scandalous. Generally:

> Immaterial matter is that which has no essential or important relationship to the claim for relief. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action.

*Nazario v. Nationwide Prop. & Cas. Ins. Co.*, 2022 U.S. Dist. LEXIS 131209, *6-7 (E.D. Pa. Jul 25, 2022) (*citing*, *Bacon v. USAA Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 76218 (M.D. Pa. May. 6, 2019) (*quoting*, *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009)).  Further, a scandalous pleading is that which "reflect[s] cruelly" upon the defendant's moral character, use[s] "repulsive language," or "detract[s] from the dignity of the court." *Core Leasing, Inc. v. American Airlines, Inc.*, 1990 U.S. Dist. LEXIS 8094, *13 (E.D. Pa. Jul. 2, 1990) (*quoting*, *Skadegaard v. Farrell*, 578 F. Supp. 1209, 1221 (D.N.J. 1984)).

Paragraph 27 the Second Amended Complaint states:

> A glaring example of Muffoletto's illegal conduct is his e-mail to attempt to recruit a [sic] Amres, mortgage sales producer, Mr. Roman Fogel who was, and still is working with Amres, and who's [sic] production is indicative of what damages Amres suffered by Muffoletto [sic] solicitation of 10 producers away to Revolution.

*See* Exhibit C, ¶ 27. Baselessly accusing Muffoletto of "illegal" conduct is inherently scandalous and impertinent. This is not a criminal matter. Plaintiff has not asserted any civil claims based upon violation of any criminal statute. Nor do Amres' civil claims against Muffoletto otherwise require establishing illegal conduct as a prerequisite to recovery. Therefore, any characterization of Muffoletto's conduct as "illegal" is immaterial and inappropriate to the proofs of Plaintiff's causes of action. As a result, the allegation of "illegal" conduct is both scandalous and impertinent and should be stricken pursuant to Rule 12(f).

Additionally, Plaintiff's assertion in Paragraph 44 of alleged violations of common law and contractual duties by an unnamed and unidentified "LLC" should also be stricken as scandalous and impertinent. *See* Exhibit C, ¶ 44. This LLC is not a party to this civil action. Therefore, any allegations pertaining to its purported conduct are immaterial to Plaintiff's causes of action and should be stricken pursuant to Rule 12(f). To the extent that Plaintiff argues that the conduct of

this unidentified LLC is somehow material, the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 19(a) for failure to join a necessary party.

## VI.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants, Michael Muffoletto and Revolution Mortgage, respectfully request that this Honorable Court grant their Motion to Dismiss and enter the attached Order.

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

BY:    */s/Christopher C. Negrete*
JOHN P. MORGENSTERN
CHRISTOPHER C. NEGRETE
DREW L. MALLICK
Pa. ID Nos. 80014 / 86152 / 207996
Three Logan Square
1717 Arch Street, Suite 3910
Philadelphia, PA 19103
Phone: (215) 461-3300
Fax:     (215) 461-3311
jmorgenstern@ohaganmeyer.com
cnegrete@ohaganmeyer.com
dmalllick@ohaganmeyer.com

*Counsel for Defendants,*
*Michael Muffoletto and*
*Revolution Mortgage*

Dated: <u>March 12, 2024</u>