IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMRES CORPORATION** | : |
| Plaintiffs, | : Civil Action No. 2:24-cv-771-MAK |
| v. | : |
| **MICHAEL MUFFOLETO and** | : |
| **T2 Financial LLC d/b/a Revolution Mortgage and** | : |
| **Anthony Grothouse and** | : |
| **Timothy Johnson** | : |
| Defendants. | : |

**PLAINTINFF's FOURTH AMENDED COMPLAINT**

Plaintiff, Amres Corporation, by and through authorized counsel of record, hereby submits its Fourth Ameded Complaint against Defendants captioned above, and in support thereof avers the following:

**THE PARTIES**

1. Plaintiff Amres Corporation ("Amres") is a Pennsylvania (C) corporation, with office headqurters at 1 Neshaminy Interplex Drive, Suite 310, Trevose, Bucks County, PA 19053. ECF Doc. 17.

2. Defendant, Michael Muffolletto ("Muffolletto"), is a natural person former officer or employee of Amres who currently resides at 606 ROSE DOWN TRCE SOUTH PEACHTREE CITY, GA 30269.

3. Defendant, **T2 Financial LLC**, a/k/a, Revolution Mortgage is a Limited Liability Company, or an S, C, or similar business organization, in the mortgage business, with corporate offices

usual place of business located at in Ohio at 480 Olde Worthington Rd . Ste 300, Westerville, Ohio 43082, or headquarters 579 Executive Campus Drive Suite 300, Westerville, Ohio 43082 where it was served.

4. Deposition of Peter Morris held on April 19th 2024, revealed that Morris, Webster and Gaddis, employment with Amres overlapped with their subsequntly attained empoyment with Revolution, whicb overlap was actively fostered by the ownership and high ranked executives of Revolution, in an unlawful torturous manner that benefited Revolution at the expense of Amres, as set more fully below.

5. Defendants Anthony Grothouse and Timothy Johnson are natural persons, upon belief owners and/or highly ranked executives with Revolution who met with, paid for travel and otherwise actively interfered with Morris, Gaddis, Webster and, at the time they were aware that these were still active Amres employes, in effort to poach them away from Amres to Revolution and with their respective book(s) of business and customers and pending mortgage applications all begun with Amres, and did actually do so, as more fully set below.

6. Citizenship of Anthony Grothouse and Timothy Johnson, has been disclosed by Revolution to be in the State of Ohio. See ECF Doc. 10.

7. Peter Morris is a former Reverse mortgage specialist with the Amres, who also, at one point, berfore his employment with Amres ended, became employed by or was acting as an agent of Defendant Revolution Mortgage as a director of Reverse Mortgage Division where he currently still works.

8. Nicole Webster is a former Reverse mortgage specialist with the Amres, an assistant to and a daughter of Peter Morris, who also at one point before her employment with Amres ended,

became employed by, or an agent of Defendant Revolution Mortgage, where she is still employed.

9. Matthew Gaddis is a former mortgage specialist with the Amres, who also at one point before his employment with Amres ended became employed by, or an agent of the Defendant Revolution Mortgage.

10. Kelly Gabler is former mortgage specialist with the Amres, who also at one point before her employment with Amres ended became employed by, or an agent of the Defendant Revolution Mortgage.

11. Morris, Webster, Gabler and Gaddis are not being named Defendants in this lawsuit only and solely because they have elected to aribtrate the claims Amres will assert against them pursuant to Arbitration Agreement found in their employment agreements, at specific request of Defendants' counsel in this aciton.

## JURISDICTION AND VENUE

12. The matter is currently before this Court as it was Removed from Bucks County CCP, by the Defendants (Muffoletto and Revolution), claimiung that Diversity of Citizenship exists between all parties, and the amount in dispute exceeds $75,000. (ECF. Doc. 1).

13. This case relates to transactions and occurrences relevant to the business of the Plaintiff, of residential mortgage originating, underwritting, and lending, with its primary place of business and corporate headquarters located in Bucks County, Pennsylvania, accordingly, within the geographical area of this Court.

14. Personal jurisdiction over Defendant Michael Muffoletto ("Mufoletto"), stems from his employment with the Plaintiff, a Pennsylvania corporation, located within this Court's regional jurisdictional boundaries, as set forth above.

15. Personal jurisdition of this Court over Defendant Revolution Mortgage, and all its constituents, stems from their purposful availment to Pennyslvania market and their offerings in Bucks, and Philadelphia Counties, via offices they list in Skippack and Allentown Pennsylvania, as well as its website wherein it specifically allows potential customers' screen dropdown bar to show counties that are within geographical area of the Eastern District of Pennsylvania incorporated by reference via operation of Pa.R.C.P. 1019(d)and (g), in the record on this Complaint as public record:

    Revolution Mortgage

    nmls #: 2289822, 3900 Skippack Pike, Unit C4

    Skippack, PA 19474, p:+16109827900

    e:skippack360@revolutionmortgage.com

16. Personal Jurisdiction over Grothouse and Johnson is based on their commision of tort in the forum, poaching out to competitor's work force, at least Peter Morris and Nicole Webster, and likely Matthew Gaddis, as well, by actively attempting to lure the workforce away from Amres, including paying to fly them to Ohio to meet with Revolution for two days, (May 24th and 25th of 2023), and subsequently meeting with them online, persistently on several occassions, enocouraging and empowering the workforce to not only go over to Revolution but to take their pending books of Amres business with them to Revolutiuon, as set forth more fully below. *See* Peter Morris deposition attached as **Exhibit B**, p. 20:18-22. *see also* p.68:7-20, see below ¶51, *see also* **Exhibit E.**

17. Muffelletto induced Amres to hire him by making various oral representations to Amres executive and CEO, Mr. Stephen Mark Wilson, about his skills and ability and willingness

to contribute to Amres, such as but not limited to, that if hired he is ready willing and able to recruit and lead a sales force to net over 3 million in monthly residential mortgage sales.

18. As a result, Muffoletto was employed as the "National Sales Executive" with Amres, to commence employment on or about May 20th 2022, initially negotiated to be paid around $250,000 per yr, as a W2 employee.

19. Muffoletto's main activity with Amres was to recruit mortgage sales and other proffesionals for Amres.

20. As of the date his employment commenced, Muffoletto owed Amres a fiduciary duty of care and loyalty which as a matter of Pennsylvania law, required of him to perform all tasks with utmost dilligence and act solely in the best interests of Amres.

21. In addition to his employment agreement, Muffoletto signed entered into other agreements, specifically at issue in this action is the "**Confidentiality, Assingment and Non-Solicatiation Agreement**", entered into by Muffolleto upon commencment of his employment". See Exhibit "A".

22. Muffoletto worked from home located in the State of Georgia of which he was a resident at least a decade before his engagement with Amres, and where he, upon belief still resides to this date.

23. In this matter Muffoletto filed Rule 7.1 disclosure that he is in fact resident of GA. ECF. Doc 10.

24. Nevertheless,on or around September 28th 2023, after instant lawsuit was filed in this Court, Muffoletto filed a case against Amres in Palm Beach county Florida, falsely alleging in ⁋2 of his Complaint,as basis for jursdiction, that he was providing services for Amres in and from Florida, Palm Beach County, Incorporated by reference pursuant to Pa.R.C.P. 1019(g), see

Muffolleto v. Amres, 15th Judicial District of Florida, Case number 502023CA014177XXXAMB;

25. Muffoletto, never provided services to Amres in, or from State of Florida, much less any servies to Amres in Palm Beach County.

26. Muffoletto did not provide any Amres related service in or from State of Florida, at best, if any such services were incidental (such as represeting he is working from his home in GA, while actually on vacation in Florida unbeknown to Amres), or fabricating a superficial contact/ recruiting interview in Florida only to create an impression of official business purpouse, however in any event, Muffoletto never recruited a single employee or agent, while in Florida, if ever, or from the State of Florida, while at Amres.

27. Muffoletto is to this day maintaining the falsification regarding the extent of his Amres related Florida activities, which falsification has had an effect on this action as well.

## COUNT ONE -BREACH OF FIDUCIARY DUTY

## AMRES v. MUFFOLETTO

**27.** Plaintiff re pleads the foregoing paragraphs as if set forth at length herein.

28. Muffoletto's employment with Amres which lasted from around May 17th 2022, until or about June 16th 2023.

29. In addition, while working for Amres, and without Amres's knowledge and or permission Muffoletto obtained two other employments in mortgage industry for entities that are fairly characterized as competitors of Amres.

30. One such employer/or proprietor of Muffoleto's services, was the Defendant Revolution Mortgage.

31. According to the records of State of Georgia, Muffoletto, April of 2023, he also organized his own LLC, which is in the business of recruitment of mortgage sales personnel, which parallels his engagement with Amres.

32. Muffoletto worked from his home for Amres, as specifically stated in his employment agreement, thus evaded any supervision.

33. By working for other employers (Revolution Mortgage, First National Bank of Nebraska, and operating his own LLC, Muffoletto failed to act within the best interest of Amres.

34. Muffoletto had a duty to devote himself to interests of Amres which encompassed *inter alia,* the duty to perform his Amres with loyalty, be reasonably focused, rested, and devote uninterrupted attention to detail, and many other aspects, all of which were inhibited and diminished by his other engagements.

35. If there was a qualified candidate that Muffoletto came across, he had a duty to recruit them or present them to Amres as a potential hire, however, upon belief Muffoletto would instead offer such candidate to whomever other employer or entity he stood to gain the most from, upon belief primarily to Revolution mortgage.

36. Muffoletto even attempted to recruit Amres employees mortgage established specialist, and a barred attorney, to Revolution, Mr. R Fogel, Esquire, see Ex C. (redacted).

37. Upon belief Muffoletto's LLC "Recruiting Navigator LLC", was established by Muffoletto while he was at Amres as a third party intermediatary for Revolution, and FNBN to make payments to Muffoletto, as a reward for all instances where Muffoletto's betrayal of his fiducary duties to Amres resulted in Revolution and FNBN's gain, wheteher in succesfully recruiting personnel to Revolution or FNBN when they should have been offered to Amres,

or worse, Muffoletto's poaching away Amres existing personnel in favor of Revolituon or FNBN, such as Morris, Webster, Gabler, Gaddis and aa few others.

38. As a result of him working for other employers, Muffoletto's performance of Amres tasks necessarily suffered so that if he ever did any work for Amres the quality of it was necessarily diminished.

39. Muffoletto's performance of tasks for Amres necessarily suffered because in addition to devoting himself to other employers as set forth above, he also made conscious effort to hide and conceal from Amres all of his other employment, which further distracted him from his actual duties at Amres, and from being able to perform them with "the punctilio of an honor the most sensitive" which he was obliged to do as a fiduciary of Amres.

40. Muffoletto never told his superior (CEO of Amres, Mark Wilson), or anyone in Amres Human Resources department about his other concurrent employments, and confided only in an Operations Manager, Heather Grasso, exploiting her willingness to assist under false pretenses of looking only for a local "night and weekends" job.

41. Muffoletto's results (his bottom line), at Amres, indicates utter lack of success, and further proves that he performed his Amres duties with recklessly disregard of Amres' intersts and in a, slovenly, and purpusfully disinterested and in saboteur like manner, breaching his fiduciary duties to Amres.

42. Muffoletto was also using Amres resources, using Amres leads Amres paid to have generated, and as a result of Muffoletto's breach of fiduciary duty, Amres suffered damages, the full extent of which is yet to be determined but which are quantifiable as a product of least all of the salary that he was paid in compensatory damages, as well as expectations damages, loss of opportunity, good will.

43. But for Muffoletto's failure to act solely and exlusively in the best interests of Amres while he was still employed there, in negligently and intentionally failing to recruit qualified sales candideates to Amres, but also interntionally attempting and actually succuding in luring away present Amres employees to Revolution and others,  Amres suffered damages at least measurable in loss of sales volume, loss of market share, Muffoletto's salary and benefits, and training expenditures, which in turn resulted in loss of profits face value of which exceeds $75,000.

44. In addition to his role as a director of recruiting at national level,  Muffoletto even went as far as availing himself to Amres, as a "counselor" for any sales persons that were experiencing pressure or difficulties, (at Amres), and needed to talk to someone to overcome it.

45. Upon belief Muffoletto, took on this secondary duty, not to actually help any Amres employee cope and better Amres's production and goals, but only as means to easily identify disgruntled employees whom he could solicit away from Amres.

46. Upon belief, Muffoletto was workoing for or on beahlf of Revolutuon months before being terminated at Amres, during which time Revolution supplied Muffoletto with administrative means and financial incentives to act against interests of Amres, and in their interests, which included making payments to Muffoletto's LLC.

47. Pursuant to the holding in this Circuit, Defendant, Revolution, as Muffoletto's current employer, can be held jointly and severally liable to Amres, for all damages Muffoletto caused Amres by a way of  breach of his fiduciary duty to Amres,in furtherance of the interests of his current employer Revolution, for any period of time in which Muffolleto worked for, or was engaged by Revolution but before being terminated by Amres, by

operation of doctrine respondent superior. United Statesg Ins. Servs., Inc. v. Bacon, Civil Action No. 2:16-cv-01024, 17 (W.D. Pa. Nov. 22, 2016).

**Wherefore**, Plaintiff prays for a judgment in their favor and all damages allowed under the law including compesatory, and special damages and puntitive damages, and any other relief the Court sees fit and just under circumstances.

## COUNT II -TORTUROUS INTERFERENCE
## AMRES V. REVOLUTION MORTGAGE and TIMOTHY JOHNSON AND ANTHONY GROTHOUSE

48. Amres repeats and re alleges all previous averments as if fully set forth herein.

49. Defendants Peter Morris and Nicole Webster both voluntarily resigned from Amres on July 3rd 2023, at around 4 30pm EST.

50. Peter Morris, and Nicole Webster, were with Amres in a role of Reverse Mortgage department/team, as of January 2nd 2023, where Peter was a specialist and Nicole run the Reverse mortage applications, backdoor operations and processing.

51. According to Peter Morris, on May 9th 2023, he received a phone call from Defendant Timothey Johnson as follows:

    "*I got a call from Tim Johnson on May 9. He was one of the owners. he was trying to recruit me to come and work there.*"                                Exhibit B. p. 20.

52. Peter Morris and Nicole Webster were flown at expense of Revolution to meet with Revolution executives and the management on May 24th and 25th 2023.                Id. p26.

53. At the time Revoluton did not have any business or market share in Reverse Mortgage field, however by virtue of Morris and Webster, Amres did. Id.

54. Defendants Anthony Grothouse and Timothy Johnson, owners of Defendant Revolution Mortgage as disclosed by Revolition (Doc. 7), continued to aggressively pursue and Morris and

Webster meeting with them remotely over "Zoom" or MS Teams, persistently and on several addiotnal occassions (May 30th , June 27th of 2023), while Amres, determined to do whatever it took to have them leave Amres and join Revolution.   Id. at p.68:7-20. *See also* recovered e mailS(s) what was explained by Morris to be  meetings hosted by Defendants Anthony Grothouse and Timothy Johnson or both, with Morris and Webster attached as **Exhibit E.**

55. Upon belief, as early as of May 5th 2024 or sooner,  or by May 24th and 25th at the latest, (when Johnson and Grothouse flew Morris and Webster to Ohio, they (Moris, Webster and likely Gaddis as well), stopped acting in the interest of Amres, despite still collecting Amres salary officially being employed by Amres, and being privy to all Amres customer leads and records, and resources and all actions these Defendants have taken thereafter with respect to producing and closing mortgages were for the benefit of Revolution.

56. Grothouse and Johnson were well aware of Webster, Gaddis, Morris and Gabler employment with Amres at all relevant times, most evidently judging by, online meetings in which Webster, Gaddis, Morris, Webster met with Grohouse, Johnson and Fenton, and others using their "**@amres.com**"  e mails to log in and conduct the meetings.  Id.

57. Morris testified that Webster worked closely with him at Amres, as his assistant,  and that their hours at Amres were 24/7.  *See* Exhibit B p. 63:10-19.

58. As such, all of the meetings that took place between them (Morris, Webster), and Revolution including with the the ownership, in May and June of 2023, and prior to July 3rd  4 :30 pm EST, whether online and in person, were, per Morris' own tetimony under oath, took place during times when Morris and Webster should have othersie been working for Amres.

59.  Morris testified that he worked with software known as "ReverseVision", for all his Amres  leads and submitted applications, and that he would manually make entries to it, using his own

credentials to sign in, however the leads and any activity of whatsoever abruptly end on May 5th 2024, just 4 days prior to the phone call from Timothey Johson. Id. p56-59.

60. On his last da, July 3rd, but just before Webster and Morris made it known to Amres that they are resigning (without any advance notice), Morris had deleted his entire Amres e mail inbox, and also deleted the trash box. Id. p. 32:9-22.

61. Amres was able to recover e mails Morris had deleted and several of them revealed that just hours before resigning he had sent to himself at least four different reverse mortgage clients that had already started their applocations and process with Morris at Amres, and had received a letter from Morris with Amres letterhead on the day he resigned.

62. Morris did admit that he considred whatever was on Amres software and Amres e mails to be Amres property.  Id. p30.

63.  Morris also admitted that he e mailed all Amres customer files from Amres e mail to his personal GMAIL, prior to leaving Amres, in order to have those loans close with him at a later date, at a different outlet, cutting out Amres altogether. Id. p.45.

64. Actions of Kelly Gabler, who was Morris assistanr were under direction and supervison of Morris, and are charged to Morris under respondent superior or agency theory. Id. p. 43

65. Morris could not deny that Gabler, Webster, and himself, may have e-mailed from their respective Amres e-mails, to their personal e mails,  the following Amres customer leads or already subbmitted reverse mortgage customer applications with Amres, and were only awaiting HUD counseling, all of which accounts, may have closed at Revolution:
 a)   Al Stucker; b) William Faris; c)Sandra Flory; d) Lewin e) Tiahrt; f) Thatcher;

 g) Salzman; h) Stuart;

       *See* **Exhibit F**, (June 26th update List E Mail),*see also* Ex. B, p.77-81

66. Actions in paragraphs 53-58, of Morris, and Webster and Gabler were encouraged and empowered by Grothouse and Johnson.

67. As a direct and proxime results of actions and omissions of Defendants named in this Count, Amres suffered damages in loss of sales volume, loss of market share, loss of profit, loss of good will, the face value of which exceeds $75,000.

68. Gaddis was with Amres since 2022 and worked with regular rather than Reverse mortgages.

69. By a way of example, while he was still with Amres, and even using his Amres e mail, Matthew Gaddis was closing customers like Jacob Grossi with Revolutiom. Exhibit G.

70. Gadis was upon belief also recruited to Revolution by Muffoletto either after he left Amres, and in violation of non solicitation agreement, or while bith were still employed at Amres in violation of their Fiduciary duties to Amres.

71. Upon belief, Johnson and/or Grothouse also engagged in simialr conduct with Gaddis, as they did with Morris and Webster, luring him away from Amres, and encouraging him to take with his Amres customers and book of business.

72. Gaddis Amres e mail box also appears to have been deleted by him just before his voluntary resignation from Amres.

73. As a direct and proxime results of actions and omissions of Defendants named in this Count, Amres suffered damages in loss of sales volume, loss of market share, loss of profit, loss of good will, the face value of which exceeds $75,000.

74. Defendants' conduct was reckless, pre concieved, intentional and pre mediated, calculated to enrich themselves and Revolution at Amres's expense, and Defendant

Revolition liable for all damages herein, including undue anxiety mental anguish suffered by Amres leadership specifically Stephen Mark Wilson, the CEO.

75. Revolution mortgage knew or should have known, of Muffolletto's, Gaddis, Websters' and Morrises employment with Amres, as Revolution management had contacts with Amres CEO prior and during the same time period, having signed Non-Disclosure Agreement ("NDA"), with Amres signed in April of 2023, a copy of which is in possession with Revolution Mortgage and incorporated herein by operation of Pa.R.C.P. 1019 (d) and (g).

76. Revolution mortgage had actual knowledge of Muffolletto's restrictive covenants signed and agreed upon employment with Amres as they are standard in the industry, and as disclosed under NDA with Amres' CEO.

77. By and though Muffoletto, and/or as information revealed by Amres' CEO, with expectation of it remaining proprietary, , Revolution Mortgage also knew that Amres had mutually beneficial agreements with other profit producing mortgage sales professionals, like Gaddis, Morris and Webster.

78. Defendant Revolution Mortgage, either through Muffoletto or using contact information furnished by Muffoletto, or from alternative sources, solicited at least 10 such Amres employees, including the Defendants named in this suit and individuals mentioned herein.

79. Executives of Revolution went to great lengths to poach away key Amres sales personnel, such as Peter Morris and Matthew Gaddis and Nicole Webster, and Kelly Gabler.

80. Defendant Timothy Johnson is alleged to have personally engaged in interfering with Amres sales force, as he is alleged to have telephoned Peter Morris on at least two occasions, as set forth above.

81. Timothy Grothouse and Timothy Johnson are alleged to have met with Amres Gaddis and Webster, while they were still employed by Amres in person and via remote technology. *See* Zoom /Teams meetings with Defendants Morris and Webster attached as **Exhibit** E. (zoom meeting exhibits of May and June of 2023).

82. Under Pennsylvania law, such personal and active participation in tortourous activity named Torturous Interference, the activity brings about personal liability of the actor, notwithstanding the corporate parent Revolution, therefore Grothouse and Johnson and personally liable jointly and severally with Revolution for all damages resulting from torturous interference.

83. As a result of Torurous interference by Revolution, and its leadiership including specifically Johnson and Grothouse, Amres suffered damages in loss of employees, loss of sales volume, loss of market share, espeically in reverse mortgage markter, which in turn resulted in loss of profits face value of which exceeds $75,000, as well as other non economic damages.

84. Under Pennsylvania law, Revolution Mortgage is held vicariously liable for the actions of a new employee's or agents, , who breached his fiduciary duty to a previous employer, Amres, in furtherance of the interests of his future employer." United Statesg Ins. Servs., Inc. v. Bacon, Civil Action No. 2:16-cv-01024, 17 (W.D. Pa. Nov. 22, 2016).

**Wherefore**, Plaintiff prays for a judgment in their favor and all damages allowed under the law including compesatory, expectation damages, special (non economic), damages and puntitive damages, and any other relief the Court sees fit and just under circumstances.

# COUNT THREE

## AMRES V. MUFFOLETTO, BREACH OF NON SOLICITATION AGREEMENT

85. Plaintiff re pleads the foregoing paragraphs as if set forth at length herein.

86. The "Confidentiality, Assingment and Non-Solicatiation Agreement", "Agreement", entered into by Muffolleto upon commencment of his employment"., attached as **Exhibit "A".**

87. In relevant part the agreement containes following enforceable covenants: "**SECTION VII- Non Solicitation of Amres Employees**", which restricred Muffoletto from being able to recruit away from Amres for 12 months after his employment with Amres.

88. Muffoletto violated the foregoing section by attempting to recruit Amres empolyee/agent Mr. R. Fogel on or around June 23rd 2023, just 4 days after he was terminated from Amres. See Exhibit C redacted for personal information.

89. Upon belief it was Muffoletto who introduced Morris and Gaddis to upper management of Revolution, and facilitated the contact with them, which is an instance of violation of the agreement, however upon belief such actions occurred while Muffoletto was still with Amres and therefore the duty breached was not merely contractual but one of an employee to employer, duty of care and loyalty.

90. Similarly, "**SECTION VIII- Non Solicitation of Business and Customers**," in summary prevented Muffoletto, and others, from taking Amres customer lists, employee lists, leads and other information to any party including themselves when no longer with Amres.

91. Muffoletto breached Sec. VIII, by causing, encouraging, introducing Amres sales employees/agents, some og whom are mentioned above herein, to not only deflect themselves to Revolution but also to strongly suggested, encvouraged them explicitely or implicitely, to

take their Amres leads, current potential and existing customers, and open books of business to Revolution and other entities (FNBN).

92. As a result, Amres suffered damages, the full extent of which is yet to be determined but which are quantifiable as a product of least all of the salary that he was paid in compensatory damages, as well as expectations damages, loss of opportunity, good will.

93. As a result of Amres suffered damages in loss of sales volume, loss of market share, which in turn resulted in loss of profits face value of which exceeds $75,000.

94. Defendant Revolution, as Muffoletto's current employer Revolution, is jointly and severally liable for all damages Muffoletto caused Amres, as a matter of Pennsylvania law.

**Wherefore**, Plaintiff prays for a judgment in their favor and all damages allowed under the law, including actual damages, and costs and reasonable attorney fees pursuant to the enabling clause in the non solicitation agreement, and any other relief the Court sees fit and just under circumstances.

Dated: April 28th 2024

s/ _____
Predrag Filipovic, Esq.

Law Office of Predrag Filipovic, Esq.
230 S Broad st. Fl 17, Ste 36,
Philadelphia, PA 19102;
 PA BAR ID: 312568;
**N**J Bar Id (029312011)
Tel:  267-265-0520
Fax: 215-754-4190
www.StopRipoff.com


EXHIBITS A-G

## CERTIFICATE OF SERVICE

I Predrag Filipovic, Esq. hereby certify that the foregoing Disclosure will be served upon opposing counsel of record via Court's ECF on April 29th 2024