**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMRES CORPORATION, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 2:24-cv-00771-MAK |
| | : | |
| MICHAEL MUFFOLETTO; T2 | : | |
| FINANCIAL, LLC D/B/A REVOLUTION | : | |
| MORTGAGE; ANTHONY GROTHOUSE; | : | |
| AND TIMOTHY JOHNSON, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW OF DEFENDANTS, MICHAEL MUFFOLETTO, T2
FINANCIAL, LLC D/B/A REVOLUTION MORTGAGE, TIMOTHY JOHNSON AND
ANTHONY GROTHOUSE, IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Defendants, Michael Muffoletto ("Muffoletto") and T2 Financial, LLC d/b/a Revolution

Mortgage ("Revolution"), and newly-named defendants, Timothy Johnson ("Johnson") and

Anthony Grothouse ("Grothouse") (collectively, "Defendants"), by and through their undersigned

counsel, O'Hagan Meyer, PLLC and Bailey Cavalieri, LLC, hereby file this Memorandum of Law

in Support of their Motion to Dismiss the Fourth Amended Complaint of Plaintiff Amres

Corporation ("Amres") *(ECF 30)*, as follows:

## I.  <u>INTRODUCTION</u>

In Amres' *fifth* version of its pleading, the Fourth Amended Complaint, Amres continues

to fail to state a claim upon which relief can be granted and has failed to establish personal

jurisdiction over newly-named Defendants, Johnson and Grothouse. Amres has attempted to cure

prior defects by inventing false factual allegations without first making reasonable inquiry.  Amres

has also continued to assert claims that were already dismissed with prejudice. This conduct

supports an award of reasonable expenses pursuant to 28 U.S.C. § 1927. To the extent that such

conduct continues, a separate motion for sanctions in accordance with Rule 11 would be warranted. For these reasons, Defendants seek dismissal with prejudice of the claims challenged below. Amres has been afforded chance after chance to plead a short and plain statement of its claims and any further amendment will be futile.

## II.     PROCEDURAL AND FACTUAL HISTORY

### A.     Procedural History

Amres sued Revolution and Muffoletto in state court on August 4, 2023, via the filing of a Writ of Summons, which did not identify the claims being brought or the factual basis for such claims. Having failed to timely effectuate service, Amres reissued the Writ of Summons on September 20, 2023.  Amres then filed its original Complaint on October 12, 2023, asserting claims for fraud, breach of contract and tortious interference.  Defendants filed preliminary objections to all claims and argued improper service. Amres responded with its First Amended Complaint, but again failed to cure the service issue, forcing Defendants to file additional preliminary objections.

Amres responded with its Second Amended Complaint, which materially changed the claims by dropping the fraud and tortious interference claims. Instead, Amres asserted breach of fiduciary duty, two separate breach of contract claims, conversion and civil conspiracy.  Amres still failed to properly serve Defendants pursuant to Pa. R. Civ. P. 403. Defendants cut to the chase by filing an Acceptance of Service on February 21, 2024, agreeing that the undersigned was authorized to accept service as of that date.  Defendants did this to avoid further delay as Amres continued to amend the Complaint in response to Defendants' preliminary objections rather than actually cure the service defects.

Thereafter, Defendants removed the action to this Court on diversity grounds and moved to dismiss the Second Amended Complaint. *ECF 1; ECF 6.*  On March 21, the Court held oral

argument on the pending motion and ordered Amres to either stand on its one claim for breach of fiduciary duty, or to take its fourth and final bite at the pleading apple by filing a third amended complaint by no later than April 1. *ECF 13*.

On April 1, Amres filed its Third Amended Complaint materially altering the contentions of its prior pleadings. Amres now alleged three causes of action against Muffoletto (breach of fiduciary duty, breach of the non-solicitation agreement and tortious interference) and sought to hold Revolution liable as to all three claims on a theory of vicarious liability. *ECF 21*. Gone were the claims for conversion, civil conspiracy, breach of contract against Muffoletto based upon his employment and non-competition agreements, and breach of contract against Revolution based upon a non-disclosure agreement. Returning were Amres's claims for breach of fiduciary duty and breach of contract based upon a non-solicitation agreement. Resurrected was Amres' tortious interference claim which it had dropped when it filed the Second Amended Complaint. Revolution moved to dismiss nearly all the claims on Rule 12(b)(6) grounds. *ECF 25*. Amres did not oppose the motion, instead filing a motion for leave to file a fourth amended complaint. *ECF 26*.

The Court again heard oral argument on April 24, 2024, during which it granted Defendants' Motion to Dismiss as unopposed. In doing so, the Court dismissed the following claims with prejudice:  (1) breach of fiduciary duty against Revolution; (2) breach of non-solicitation agreement against Revolution; and (3) tortious interference against Muffoletto. *ECF 29*. The Court dismissed the remaining claims without prejudice while granting Plaintiff leave to file a Fourth Amended Complaint. *ECF 29*.

On April 29, Amres filed its Fourth Amended Complaint. *ECF 30*. This time, not only does the Fourth Amended Complaint materially alter the claims asserted, but it continues to assert claims that this Court already dismissed with prejudice. Amres has kept Count I, for breach of

3

fiduciary duty. While the claim's heading states that it is pled only against Muffoletto, it still seeks a finding of liability and damages against Revolution, notwithstanding the dismissal with prejudice of the claim against Revolution. *ECF 30, ¶¶ 46-47.*

Count II alleges tortious interference is pled against Revolution and two of its officers, new-defendants Grothouse and Johnson. While this claim has been dropped against Muffoletto, it does to seek to hold Revolution vicariously liable for Muffoletto's alleged actions. Amres further claims that two Revolution executives, Grothouse and Johnson, personally participated in tortious conduct in recruiting Amres employees and encouraging them to take customers from Amres. These contentions are false and not based on any reasonable inquiry as required by Rule 11.

Count III alleges breach of contract under Sections VII and VIII of the Non-Solicitation Agreement. Amres has dropped its claim that Defendants breached Section VI. While Count III is pled against Muffoletto, it still seeks to hold Revolution liable notwithstanding the Court's dismissal with prejudice. *ECF 30, ¶ 94.* To support this claim, Amres has invented factual averments that Muffoletto caused and encouraged individuals to take information and customers from Amres. These newly invented factual contentions are both false and are not based on any reasonable inquiry as required under Rule 11.

   B.   <u>**Factual History**</u>

Muffoletto is a former employee of Amres. *See* Exhibit C, ¶ 2. Amres alleges that it terminated Muffoletto. *ECF 30, ¶ 46.* On September 28, 2023, Muffoletto sued Amres in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida for unpaid wages relating to his employment at Amres (the "Florida Action"). Per the Court's instruction during oral argument, Amres has dropped from its pleading any allegations relating to Muffoletto's employment agreement with Amres.

Amres' Fourth Amended Complaint alleged three causes of action against Muffoletto and Revolution which were partially disposed of through the Court's order. *ECF 29*. Nonetheless, Amres is still claiming damages from Revolution as to both its claim for breach of fiduciary duty *(ECF 30, ¶ 47)* and the claim for breach of a Non-Solicitation Agreement *(ECF 30, ¶ 94)*.

## III.   QUESTIONS PRESENTED

A.   Should Paragraphs 47 and 94 of the Fourth Amended Complaint be stricken where they assert claims for breach of fiduciary duty and breach of contract against Amres that were already dismissed with prejudice by the Court pursuant to its April 25, 2024 Order (ECF 29)?

*Suggested Answer:    Yes.*

B.   Should Count I of the Fourth Amended Complaint, for breach of fiduciary duty, be dismissed against Muffoletto for failure to state a claim under the gist of the action doctrine?

*Suggested Answer:    Yes.*

C.   Should Count II of the Fourth Amended Complaint be dismissed against Revolution, Grothouse and Johnson, for failure to state a claim, because Amres has not pled sufficient facts to establish the elements of tortious interference with contractual relations?

*Suggested Answer:    Yes.*

D.   Should Count II of the Fourth Amended Complaint be dismissed against Grothouse and Johnson, for failure to state a claim, because Amres has not pled sufficient facts of wrongdoing to create the potential for personal liability?

*Suggested Answer:    Yes.*

E.   Should Count III of the Fourth Amended Complaint be dismissed for failure to state a claim against Muffoletto for breach of Section VIII of the Non-Solicitation Agreement?

*Suggested Answer:    Yes.*

F.   Should Amres's claim in Count II that Revolution is jointly and severally liable with Grothouse and Johnson be dismissed for failure to state a claim?

*Suggested Answer:    Yes.*

**G.** Should all claims of the Fourth Amended Complaint be dismissed as to Grothouse and Johnson for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)?

*Suggested Answer:    Yes.*

**H.** Should Amres be denied leave to further amend its complaint on the grounds of undue delay, bad faith and dilatory motive, repeated failure to cure pleading deficiencies, prejudice to Defendants and futility?

*Suggested Answer:    Yes.*

## IV.    THE APPLICABLE LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require "detailed factual allegations, . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that offers nothing more than "'labels and conclusions'[,] . . . 'a formulaic recitation of the elements of a cause of action' . . . [or] 'naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and should be dismissed. *Id. at 678 (citing, Twombly*, 550 U.S. at 557). Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556 (retiring the "no set of facts" test of *Conley v. Gibson*, 355 U.S. 41 (1957)).

Under the *Twombly*/*Iqbal* paradigm, a Court must engage in a two-step inquiry to determine the sufficiency of the factual matter alleged. The Court must disregard allegations that constitute unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events, none of which are entitled

to the assumption of truth. *See Twombly*, 550 U.S. at 664 (*quoting, Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663.

The Court then must identify the non-conclusory, well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 664. If the factual allegations are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding of no liability. *See Id*.

**B.**     **Motion to Dismiss Johnson and Grothouse under Fed. R. Civ. P. 12(b)(2)**

Dismissal under Fed. R. Civ. P. 12(b)(2) is proper when the Court lacks personal jurisdiction over one or more defendants. When an intentional tort is alleged against a non-forum defendant, the Third Circuit ascertains specific personal jurisdiction by using "the *Calder* effects test, which requires us to ask whether [the defendant] committed an intentional tort, whether [the plaintiff] felt the brunt of the harm in Pennsylvania, and whether [the defendant] aimed its tortious conduct toward Pennsylvania." *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 500 (E.D. Pa. 2021) (Kearney, J.) (*citing*, *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)).

**V.     LEGAL ARGUMENT**

**A.     All Allegations Asserting Claims That This Court Already Dismissed With Prejudice Must Be Stricken**

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Here, the Court has already fully and finally dismissed with prejudice Amres's claims against Revolution for breach of fiduciary duty and breach of a non-solicitation agreement.  *ECF 29, p. 1*. The Court's April 25, 2024 Order was entered ***after a discussion with Amres's counsel and his agreement that the claims should be***

*dismissed with prejudice.* However, Amres has inexplicably reasserted these same claims against Revolution in Counts I and III of the Fourth Amended Complaint. *ECF 30, ¶¶ 47, 94.*

On May 2, 2024, the undersigned attempted to resolve this issue by contacting Amres's counsel and asking that he sign a draft Stipulation striking Paragraphs 47 and 94 to ensure that dismissed claims remained dismissed. The email chain and all attachments are attached as *Exhibit A.* Incredibly, Amres's counsel responded by acknowledging that he has not asserted a breach of fiduciary duty claim against Revolution "at this time" while simultaneously doubling down on his assertions of *respondeat superior* and joint and several liability for breach of fiduciary duty. *See Exhibit A.* Counsel even demanded that Defendants "stipulate to allow claim of Muffiletto's [sic] Breach of Fid duty to be asserted against Revolution, under joint and several liability . . ." *See Exhibit A.* Even more astonishing is Amres's baseless attack on the professional integrity of Defendants' counsel by demanding as consideration for striking Paragraphs 47 and 94, that they stipulate that they "have a conflict of interest under Rule 1.7 of Pa.R.P.C. that prevents them from representing Michael Muffoletto and Revolution Mortgage, concurrently, in this matter, therefore they immediately withdraw from representing _____." *See Exhibit A.* Ultimately, Amres's counsel's response to a simple and very reasonable request by attacking Defendants' counsel demonstrates Amres's intent to ignore the Court's April 25, 2024 Order and to multiply the proceedings by continuing to litigate claims that have already been dismissed with prejudice.

The Court's dismissal of these claims with prejudice "is the functional equivalent of a judgment on the merits." *McKenna v. Ferreira*, CIVIL ACTION NO. 92-4991, 1996 U.S. Dist. LEXIS 17935, at *3 (E.D. Pa. Dec. 5, 1996) (*citing, Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985)). Once dismissed with prejudice, the claims, therefore, cannot be re-pled or relitigated. Thus, the Court should strike them consistent with its April 25, 2024 Order. Amres's continued

assertion of, and refusal to strike, Paragraphs 47 and 94, also constitutes an unreasonable and vexatious multiplication of the proceedings that has caused Defendants to expend time, effort and expense in order to ensure compliance with the Court's April 25, 2024 Order. As such, Defendants are entitled to an award of reasonable attorneys' fees pursuant to 28 U.S.C. § 1927.

### B. Count I of the Fourth Amended Complaint, Alleging Breach of Fiduciary Duty, is Barred by the Gist of the Action Doctrine

In Count I, Amres alleges that Muffoletto breached his fiduciary duties by recruiting for Revolution and others while still employed at Amres and starting his own limited liability company. *ECF 30, ¶¶ 31, 37*. According to the Fourth Amended Complaint, "while working for Amres," Muffoletto accepted employment at Revolution. *ECF 30, ¶¶ 29, 30*. For this conduct, Amres seeks damages against Muffoletto and Revolution in clear violation of the Court's Order. *ECF 29; ECF 30, ¶ 47. See also*, § V(A) of this Memorandum of Law.

As it pertains to Muffoletto, Count I is barred by the gist of the action doctrine as it is merely attempts to recast its breach of contract claim in Count III as a tort claim. The gist of the action doctrine bars tort claims "where the duties allegedly breached were created and grounded in the contract itself." *Bacon*, 2016 U.S. Dist. LEXIS 161682, at *23-24 (*quoting*, *Sunburst Paper, LLC v. Keating Fibre Int'l,* 2006 U.S. Dist. LEXIS 78890, 2006 WL 3097771 at *2 (E.D. Pa. Oct. 30, 2006)). If the facts pled "establish that the duty breached is one created by the parties by the terms of their contract – *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 at 68 (Pa. 2014) (*citing*, *Horney v. Nixon*, 61 A. 1088 (Pa. 1901); *Cook v. Haggarty*, 36 Pa. 67 (1859); *M'Cahan v. Hirst*, 7 Watts 175, 1838 Pa. LEXIS 45 (Pa. 1838)). Only where the facts demonstrate that the claim involves a violation of a "broader social duty owed to all individuals, which is imposed by the law of torts

and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id*. at 68 (citations omitted). Thus, the substance of the allegations of the complaint controls, not the mere labeling of the claim by the plaintiff. *Id*. at 68.

Here, the duties allegedly breached by Muffoletto are grounded in the Non-Solicitation Agreement between Amres and Muffoletto. Amres alleges that Muffoletto's conduct – recruiting for Revolution *(ECF 30, ¶ 33)* and starting his own LLC *(ECF 30, ¶ 37)* – are allegedly in violation of fiduciary duties. However Amres does not allege any duties breached by Muffoletto except for those grounded in the Non-Solicitation Agreement. Therefore, the claim for breach of fiduciary duties fails under the gist of the action doctrine.

Amres' claim also fails because, as a matter of law, an employee does not breach fiduciary duties by preparing to compete upon termination provided that the employee does not use his employer's confidential information. *See Bro-Tech Corp. v. Thermax, Inc.*, 651 F.Supp.2d 378, 414 (E.D. Pa. 2009). Here, Amres alleges that Muffoletto set up an LLC to conduct recruitment, but <u>does not allege</u> that Muffoletto used of any of Amres' confidential information in preparing to compete with Amres. Taken as true, Muffoletto's creation of an LLC must be construed as nothing more than his preparation to compete once he was no longer an Amres employee.

### C.   **Count II, the Tortious Interference Claim Against Revolution, Grothouse and Johnson, Should Be Dismissed For Failure to State A Claim**

Count II of the Fourth Amended Complaint alleges tortious interference against Revolution, and two of its officers in their personal capacities, newly-joined Defendants Grothouse and Johnson. The elements necessary to establish interference with contractual rights are:

(1)   the existence of an actual or prospective relationship between the complainant and a third party;

(2)   purposeful action by the defendant specifically intended to harm the existing relation or to prevent a prospective relation from occurring;

(3)   the absence of a privilege or justification on the part of the defendant; and

(4)   actual damage resulting from the defendant's conduct.

*Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979); *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 665 (Pa. Super. 2010). *See also*, *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).

Amres alleges that "Defendant Revolution Mortgage, either through Muffoletto or using contact information furnished by Muffoletto, or from alternative sources, solicited at least 10" of Amres's employees. *ECF 30 at ¶ 78*. Revolution's conduct, as alleged, is not tortious because Amres cannot establish the third element of the claim -- the absence of a privilege. There is a general privilege to compete in a free market, and competing in the free market is not a tort. *IPEG, Inc. v. Hamilton Avtec, Inc.*, Civil Action No. 11-574, 2011 U.S. Dist. LEXIS 103028, at *16-17 (W.D. Pa. Sep. 13, 2011) (dismissing tortious interference claim on the basis of the privilege to compete). *Brubaker Kitchens, Inc. v. Brown,* 280 Fed. Appx. 174, 182 (3d Cir. 2008)  ("Since Brown and Gochnauer were at-will employees, BKI needed to prove that they were 'systematically induced' to leave BKI by Schibanoff 'for the sole purpose' of destroying BKI").

Here, Amres does not allege that any of Revolution, Johnson and/or Grothouse violated any duty to Amres. *See Chemtech Int'l v. Chem. Injection Techs.*, 170 Fed. Appx. 805, 809 (3d Cir. 2006) ("Chemtech correctly claims that it has a right to be free from -- and CIT has a corresponding duty not to commit -- certain kinds of interference in its business dealings. Chemtech does not have a right to be free from competition and CIT has no duty 'imposed by law as a matter of social policy' not to compete with Chemtech").

Here, Revolution, Johnson and Grothouse enjoy a privilege to compete with Amres by recruiting Amres employees to work for Revolution. There are no facts supporting a claim that Amres employees were 'systematically induced' to leave Amres 'for the sole purpose' of destroying" Amres. Accordingly the claim fails and should be dismissed with prejudice.

**D.    Count II, the Tortious Interference Claim Against Johnson and Grothouse, Should Be Dismissed for Failure to State  A Claim Against Them Individually**

Count II should also be dismissed, as to Johnson and Grothouse, because it fails to state a claim individually against them. To establish a claim, Amres must plead specific facts including "purposeful action by the defendant specifically intended to harm the existing relation." *Thompson Coal*, 412 A.2d at 471. "[A] court need not credit bald assertions, legal conclusions, or unreasonable inferences." *Fritz v. Cty. of Westmoreland*, No. 22-2999, 2024 U.S. App. LEXIS 4469, at *7 (3d Cir. Feb. 27, 2024). The plaintiff "must plausibly 'plead *factual content* that allows the court to draw the reasonable inference that [Defendants]" committed tortious conduct. *Id*. at *7 (cleaned up)(emphasis in original).

Here, Amres alleges that Johnson and Grothouse were participants in tortious interference but does not allege facts supporting any purposeful action by them to harm any existing relation of Amres. Instead, Amres offers a threadbare assertion that Grothouse and Johnson have "personal and active participation in tortourous [sic] activity." *ECF 30,* ¶ 82. Further, regarding the recruitment of Morris, Webster and Gabler, Amres alleges: "Actions in paragraphs 53-58, of Morris, and Webster and Gabler were encouraged and empowered by Grothouse and Johnson." *ECF 30, ¶ 66*. However, paragraphs 53 to 58 do not allege tort conduct. There is no allegation that any improper act was "encouraged or empowered" by Grothouse or Johnson in paragraphs 53-58. Paragraph 53 alleges nothing about Grothouse or Johnson. Paragraph 54 alleges that Grothouse and Johnson "continued to aggressively pursue and Morris and Webster meeting with them

12

remotely over 'Zoom' or MS Teams, persistently and on several addiotnal occasions [sic] (May 30th , June 27th of 2023)…" Paragraph 55 alleges that Grothouse and Johnson flew Morris and Webster to Ohio as part of their recruitment. Paragraph 56 alleges that "Grothouse and Johnson were well aware of Webster, Gaddis, Morris and Gabler employment with Amres…" Paragraphs 57 and 58 allege nothing about Grothouse and Johnson. Accordingly, there is no "purposeful action" by them to "harm the existing relation." *Thompson Coal*, 412 A.2d at 471.

Similarly, regarding the recruitment of Gaddis, Amres alleges: "Upon belief, Johnson and/or Grothouse also engagged in simialr conduct with Gaddis, as they did with Morris and Webster, luring him away from Amres, and encouraging him to take with his Amres customers and book of business." *ECF 30, ¶ 71 (sic)*. Tthere is no factual basis to support the claimed tort. Nothing that has been alleged against Grothouse and Johnson supports a claim that they personally participated in any tort. Accordingly, Count II fails to state a claim against Grothouse or Johnson.

### E.   Count III, for Breach of the Non-Solicitation Agreement Fails to State a Claim Under Section VIII

In Count III, Amres alleges that Muffoletto breached Sections VII and VIII of the Non-Solicitation Agreement with Amres. *ECF 30 ¶¶ 87, 90*.[1] In Pennsylvania, a "cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Corestates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (*citing Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. 1976)). "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *Id.* at

---

[1]     Amres also alleges in Count III that Revolution "is jointly and severally liable for all damages Muffoletto caused Amres, as a matter of Pennsylvania law." *ECF 30, ¶ 94*. As discussed in § V(A) of this Memorandum of Law, above, the Court already dismissed this claim with prejudice via its April 25, 2024 Order. *ECF 29, p. 1*.

1058 (*citing*, *Snaith v. Snaith*, 422 A.2d 1379, 1382 (Pa. Super. 1980)).

Amres has failed to state a claim based upon breach of Section VIII of the Non-Solicitation Agreement. *ECF 30-1 § VIII.* Amres alleges that Section VIII "prevented Muffoletto from taking Amres customer lists, leads and other information." *ECF 30 ¶ 90.* When this issue was raised in the Motion to Dismiss the Third Amended Complaint, Muffoletto argued, "Amres does not allege that Muffoletto took any of Amres's customer lists, leads or other confidential information. Nor does Amres identify any customers or business that Muffoletto purportedly diverted from Amres." *ECF 25-2, p. 11.*

The Court pointed out that Amres' claim was unsupported by facts during the April 25, 2024 conference and warned Amres that any amendment to the pleading must conform with counsel's Rule 11 obligations. The Order granting leave to file the Fourth Amended Complaint even stated that Amres should be "mindful of its obligations under Rules 8 and 11 including being informed by our concerns with its earlier pleading of breaches of sections 6 and 8 in the third amended Complaint[.]" *ECF 29, p. 2.*

Now, for the first time in the Fourth Amended Complaint, Amres has pled new facts::

> Muffoletto breached Sec. VIII, by causing, encouraging, introducing Amres sales employees/agents, some og whom are mentioned above herein, to not only deflect themselves to Revolution but also to strongly suggested, encvouraged them explicitly or implicitly, to take their Amres leads, current potential and existing customers, and open books of business to Revolution and other entities (FNBN).

*ECF 30, ¶ 91 (sic).* Notably, this important factual contention was not contained in any of the four prior versions of Amres' initial pleading -- ***including the version submitted to the Court as its proposed amended complaint on April 24. ECF 26-5.*** This vague statement accusing Muffoletto of "encouraging" unnamed others to "take" things from Amres lacks any supporting basis. Amres has not conducted any inquiry into the truthfulness of it. Rather, it was invented from whole cloth

14

to prevent dismissal of the claim in violation of Rule 11.

**F.      Amres's Assertion in Count II that Grothouse and Johnson are Jointly and Severally Liable With Revolution Should Be Dismissed**

In its claim for tortious interference in Count II, Amres improperly asserts that "Grothouse, Johnson and [sic] personally liable jointly and severally with Revolution for all damages resulting from torturous [sic] interference." *ECF 30, ¶ 82.* Joint and several liability exists only where the defendants are "joint tort-feasors" which "means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa. C.S. § 8322. A principal who is vicariously liable for the actions of its agent is not a joint tort-feasor. *See Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380 (Pa. 1989).

Amres has not pled any facts to support its claim that Revolution, Grothouse and Johnson are joint tort-feasors. Unlike vicarious liability, a joint-tortfeasor's liability is co-equal with, not derivative of, the actions of another tort-feasor. Such liability is direct and based upon its own breach of an independent duty it owed to the plaintiff. *Id.* at 1381 (agent and principal are not joint tort-feasors where liability of principal "is not based upon principal's independent actionable fault"). Here, Amres only alleges that Revolution is liable for Johnson's and Grothouse's actions solely because it employs them. This indicates that Amres is asserting liability against Revolution based on an agency theory, not because it is a joint tortfeasor with Grothouse and Johnson. Thus, Amres's assertion that Revolution is jointly and severally liable for the alleged conduct of its agents, Grothouse and Johnson, should be dismissed.

**G.      Johnson and Grothouse Should Be Dismissed For Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)**

Setting aside the other fatal defects, the Fourth Amended Complaint should also be dismissed as to Johnson and Grothouse for lack of personal jurisdiction under Rule 12(b)(2). When

an intentional tort is alleged against a non-forum defendant, the Third Circuit determines specific personal jurisdiction by using "the *Calder* effects test, which requires us to ask whether [the defendant] committed an intentional tort, whether [the plaintiff] felt the brunt of the harm in Pennsylvania, and whether [the defendant] aimed its tortious conduct toward Pennsylvania." *M3*, 516 F. Supp. 3d at 500 (*citing*, *Marten*, 499 F.3d at 297).

The Court's decision in *M3* is instructive here because the facts are similar and the underlying claim is the same. In *M3* this Court considered whether personal jurisdiction in Pennsylvania was proper over a defendant accused of committing tortious interference with contractual relations. A defendant, Atlas, was accused of recruitment of remote-working employees of a Pennsylvania-based company. The Court held that there was not sufficient evidence that Atlas was "aiming its tortious conduct" at Pennsylvania when Atlas recruited only remote-working employees by telephoning a non-forum person. *M3*, 516 F. Supp. 3d at 501 ("Atlas reached out to Ms. Hart through Ms. DasGupta, who resides in Texas. There is no evidence Atlas, through Ms. DasGupta or anyone else, traveled to Pennsylvania in recruiting Ms. Hart or Ms. Haunert"). The Court's holding in *M3* was based on the reasoning in *Numeric Analytics*, where Judge McHugh held, "the conduct in question would have emanated from Colorado, where [the former president] is located, and reached into Ohio, Wisconsin, and Virginia where the other defendants reside." *Id*. at 501 (*quoting*, *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348 (E.D. Pa. 2016)). This Court in *M3* concluded, "[l]ike in *Numeric Analytics*, Atlas's solicitation conduct ***neither emanated from nor reached into*** Pennsylvania." *Id*. at 501 (emphasis added).

Here, the allegedly tortious conduct, to the extent any is articulated, "emanated" from Ohio and "reached into" Kentucky and Arizona, but not Pennsylvania. Johnson and Grothouse have had zero contact with Pennsylvania, whether by personally visiting, by mail, by phone or by email (and

16

no such facts are pled). No facts could support a contention that Johnson and Grothouse aimed any tortious conduct at Pennsylvania. The pleading alleges that Johnson and Grothouse recruited employees working remotely for Amres -- specifically, Gaddis, Morris and Webster, none of whom were solicited in Pennsylvania.

Morris and his daughter Webster, worked remotely for Amres from Arizona. Johnson and Grothouse are alleged to have recruited Morris and Webster by telephone and email, directed at them in Arizona. Johnson and Grothouse made no effort to contact either Morris or Webster, or any other Amres employee, in Pennsylvania. Accordingly they did not "aim their tortious conduct" at Pennsylvania by virtue of the recruitment of Morris and Webster.

Gaddis worked remotely for Amres from Kentucky. Johnson and Grothouse are alleged to have solicited him, to join Revolution by telephone and email communications aimed at him in Kentucky. Johnson and Grothouse made no effort to contact either Morris or Webster in Pennsylvania. Johnson or Grothouse have not "aimed their tortious conduct" at Pennsylvania by virtue of contacting a remotely-working employee of Amres located in Kentucky.

Accordingly, like in *M3* and *Numeric Analytics*, plaintiff has not established that either Grothouse or Johnson have satisfied the "aiming" prong of the *Calder* test, so the Court lacks personal jurisdiction and the claims must be dismissed against them under Rule 12(b)(2).

**H.    The Court Should Deny Further Leave to Amend**

Dismissal under Rule 12(b)(6) is generally without prejudice, but the trial court can "deny leave to amend based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Mohn v. Cardona*, No. 22-3535, 2022 U.S. Dist. LEXIS 228379, at *19 (E.D. Pa. Dec. 20, 2022) (quotation omitted).  Here, there are multiple grounds to bar further pleadings.

a.      **Bad Faith and Dilatory Motive**

The pleading carousel has now made five full rotations. Five times Amres has pled its claims and five times the Defendants have been forced to incur attorney's fees to move to dismiss. Each time, with a motion to dismiss pending, Amres has sought an eleventh-hour amendment to its pleading to try to moot the pending motion to dismiss without responding substantively. Those amendments have consistently altered the claims asserted and the factual basis for such claims, such that subsequent complaints are considerably and materially different from previous versions. For example, Amres's original "fraud" claim dissolved into a breach of fiduciary duty claim in the Second Amended Complaint. Amres's tortious interference claim dissolved into conversion and civil conspiracy, then resurrected into tortious interference in the Third Amended Complaint.

The Fourth Amended Complaint dropped the frivolous allegation that Muffoletto was double and/or triple dipping via employment by multiple employers. The Fourth Amended Complaint now invents a brand new tortious interference claim against two new individual defendants, Johnson and Grothouse, despite pleading no facts to establish any tortious conduct. While the parties are conducting discovery, the pleadings remain open and the claims asserted remain subject to the constant shifting sands of Amres' pleadings.

The bad faith and dilatory motive of Amres is obvious. The initial pleading was filed in October of last year, yet six months later, Amres is still inventing new claims and new facts to prop up those frivolous claims. For example, Amres had in its possession emails showing contact from Johnson and Grothouse to Amres employee Morris, yet Amres waited until its *fifth* pleading to assert claims against them individually rather than including them as defendants in any of the four prior versions. This constant pattern of asserting and then withdrawing factual averments demonstrates that the averments do not, and never had, evidentiary support as required by Rule

11. This evidences a bad faith attempt to continue to amend the pleadings in order to drag out the litigation rather than face the issues on the merits.

### b.     Amres's Repeated Failures to Cure

From the outset of this litigation, Amres has repeatedly failed to cure the defects in the pleading. Amres was granted leave to file a third amended complaint, but did not cure the defects of its prior pleading which has forced Defendants to move to dismiss. Amres then failed to oppose the motion to dismiss, resulting in the dismissal of certain claims with prejudice and the remaining claims without prejudice.  While Amres obtained leave to file a fourth amended complaint to cure defects in its pleading, it has still not done so. By way of example, despite the issue of improper service being raised twice via preliminary objection while the case was pending in State Court, Amres refused to cure the defect by merely mailing the Writ of Summons and Complaint to the Defendants by any method requiring a return receipt signed by the Defendants per Pa. R. Civ. P. 403. Further, even though the Court dismissed three claims with prejudice, Amres still included two of those claims in its Fourth Amended Complaint as addressed in § V(A) of this Memorandum of Law, and then refused to voluntarily strike them. *See Exhibit A*. In fact, Amres' only attempt to "cure" its pleading defects is to invent fact allegations from whole cloth in violation of Rule 11.

### c.     Prejudice to Defendants

Defendants have been prejudiced by Amres' misconduct. Each time Amres amends its prior pleading, Amres asserts new claims, materially modifies others and invents pleading flaws while somehow also failing to correct the defects previously raised in prior motions to dismiss, such as re-filing claims in its amended pleadings that have already been dismissed with prejudice. *ECF 29, p. 1; ECF 30, ¶ 47, 94.* There is no reason to believe that Amres will not continue to amend the pleading in order to delay the inevitable ruling that will dismiss most (if not all) of its

claims with prejudice. This prejudices the Defendants by forcing them to expend time and expense repeatedly addressing the pleading defects in motion to dismiss after motion to dismiss.  Five times is enough times to get it right.

Moreover, the constantly changing claims, factual averments and addition of new parties means that the Defendants still lack clarity with regard to the claims asserted against them. This is particularly prejudicial considering that the August 19, 2024 trial date is fast approaching. This endless cycle of amendment must end so that the pleadings may close and Defendants can engage in meaningful discovery targeted to claims that actually exist and properly prepare for trial.

### d.      Allowing Amres Further Opportunity to Amend Would Be Futile

"Futility means that after amendment, the complaint would still fail to state a claim upon which relief could be granted" and "alone can be a reason to deny a motion to amend a complaint." *Mohn v. Cardona*, No. 22-3535, 2022 U.S. Dist. LEXIS 228379, at *19 (E.D. Pa. Dec. 20, 2022) (*quoting*, *United States ex rel. Thomas v. Siemens AG*, No. 09-4414, 2010 U.S. Dist. LEXIS 40442, 2010 WL 1711775 at *5 (E.D. Pa. Apr. 26, 2010)).  Here, after five attempts to plead its claims, any further attempts to amend the pleading would be futile. Additionally, since Johnson and Grothouse have had no interaction with Pennsylvania, permitting Amres to further amend will only create an opportunity for Amres to invent more novel factual contentions from whole cloth which will result in additional motions to dismiss and, ultimately, for sanctions.

### V.      CONCLUSION

For the foregoing reasons, Defendants, Michael Muffoletto, T2 Financial, LLC d/b/a Revolution Mortgage, Anthony Grothouse and Timothy Johnson, respectfully request that this Honorable Court grant their Motion to Dismiss and enter the attached Order.

Respectfully submitted,

**O'HAGAN MEYER, PLLC**

By: */s/ Christopher C. Negrete*
JOHN P. MORGENSTERN
CHRISTOPHER C. NEGRETE
DREW L. MALLICK
Attorney I.D. 80014 / 86152 / 207996
1717 Arch Street, Suite 3910
Philadelphia, PA 19103
T: (215) 461-3300
F: (215) 461-3311
JMorgenstern@ohaganmeyer.com
CNegrete@ohaganmeyer.com
DMallick@ohaganmeyer.com

*Counsel for Defendants Michael*
*Muffoletto, T2 Financial LLC d/b/a*
*Revolution Mortgage, Anthony Grothouse*
*and Timothy Johnson*

Dated:  May 3, 2024

**BAILEY CAVALIERI LLC**

CHRISTOPHER B. BURCH
(admitted *pro hac vice*)
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
T: (614) 221-3155
F: (614) 221-0479
cburch@baileycav.com

*Counsel for Defendants Michael*
*Muffoletto, T2 Financial LLC d/b/a*
*Revolution Mortgage, Anthony Grothouse*
*and Timothy Johnson*