**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AMRES CORPORATION** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-771** |
| | : | |
| **MICHAEL MUFFOLETTO** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **May 21, 2024**

A Pennsylvania employer frustrated with losing employees to an competitor is now on its fifth attempt to plead claims against its former executive and its competitor. The employer attempts to plead claims beyond breach of employment contract and breach of fiduciary duty against its departed executive it believes induced its employees to work for a competitor. The employer now attempts to sue its competitor's Ohio executives for recruiting employees outside of Pennsylvania. It also attempts to craft tort liability upon the competitor. The employer repeatedly amended its allegations with our leave. But its claims end up where the pleaded facts lead us. The employer has not shown a basis to exercise personal jurisdiction over the competitor's Ohio executives. The employer has also not pleaded a basis to impose liability upon the competitor. It may bring claims against its former executive who allegedly caused employees to leave the employer while employed there and then breached a non-solicitation promise in a contract after he departed the employer.  The parties will now complete discovery on the employer's claims against its former executive.

### I.  Alleged Facts

Amres Corporation is a residential mortgage lender and underwriter located in Bucks County, Pennsylvania.[1] It hired Georgian Michael Muffoletto in May 2022 as its National Sales Executive working from his home in Georgia.[2] Amres hired Mr. Muffoletto to recruit mortgage

sales and other professionals.[3] Mr. Muffoletto represented at the time of his hiring his skills, ability, and willingness to contribute to Amres, including to recruit and lead a sales force to net over $3 million in monthly sales.[4]

Mr. Muffoletto signed an employment agreement as well as a Confidentiality, Assignment and Non-Solicitation Agreement at the time of his hiring.[5] Mr. Muffoletto agreed, among other promises, to not solicit Amres's employees and its business or customers.[6] Mr. Muffoletto worked for Amres for almost thirteen months, from May 17, 2022 to approximately June 19, 2023.[7]

### *Mr. Muffoletto's conduct in a separate recruiting company while working for Amres.*

Mr. Muffoletto formed Recruiting Navigator, LLC in April 2023 to recruit mortgage sales professionals.[8] Mr. Muffoletto, without Amres's knowledge or permission, then hired two employees to work for Amres's competitors while working for Amres. He hired persons to work for T2 Financial, LLC and non-party First National Bank of Nebraska.[9]

Mr. Muffoletto used Recruiting Navigator, LLC as a way to receive payments from T2 Financial and First National Bank of Nebraska for his services to them.[10] Mr. Muffoletto recruited qualified candidates for T2 Financial instead of Amres.[11] Mr. Muffoletto attempted to recruit current Amres employees, including mortgage specialists Roman Fogel, Peter Morris, Nicole Webster, Matthew Gaddis, and Kelly Gabler to work for T2 Financial.[12] Amres employees Mr. Morris, Ms. Webster, Mr. Gaddis, and Ms. Gabler all left their employment at Amres for employment at T2 Financial.[13]

Mr. Muffoletto's efforts on behalf of T2 Financial affected his performance for Amres all while being paid by Amres.[14] Amres lost sales volume and market share, lost profits, and continued to pay Mr. Muffoletto salary, benefits, and training expenses.[15]

*T2 Financial's Timothy Johnson's and Anthony Grothouse's conduct.*

T2 Financial employs Ohio citizens Timothy Johnson and Anthony Grothouse as "highly ranked executives" of T2 Financial.[16] Mr. Johnson called Amres reverse mortgage specialist Peter Morris to recruit Mr. Morris for T2 Financial on May 9, 2023.[17] An unidentified person at T2 Financial paid for airfare for Mr. Morris and his daughter Nicole Webster, who worked with her father in the reverse mortgage space for Amres, to meet with T2 Financial executives on May 24 and 25, 2023.[18] T2 Financial did not have a business or market share in the reverse mortgage space in May 2023.[19] Messrs. Johnson and Grothouse continued to aggressively pursue Mr. Morris and Ms. Webster from late May to late June 2023 while the two remained employed at Amres.[20] Mr. Morris and Ms. Webster resigned from employment with Amres on July 3, 2023 and began working for T2 Financial.[21] Mr. Morris took reverse mortgage clients from Amres with him to close on loans after he left Amres.[22]

Messrs. Johnson and Grothouse, along with Mr. Muffoletto, also pursued Amres employee Matthew Gaddis.[23] Mr. Gaddis left Amres with customers and a book of business.[24]

*The parties sue each other.*

Amres sued Mr. Muffoletto and Revolution Mortgage in the Bucks County Court of Common Pleas on August 4, 2023. Mr. Muffoletto sued Amres on September 28, 2023 in Palm Beach County, Florida state court alleging Amres breached the employment agreement by failing to pay him salary and bonuses.

Mr. Muffoletto and T2 Financial removed Amres's second amended complaint from the Bucks County Court of Common Pleas on February 22, 2024, invoking our diversity jurisdiction.[25] We granted in part and denied in part Mr. Muffoletto's and T2 Financial's Motion to dismiss the second amended complaint after oral argument during our initial pre-trial conference.[26] We

dismissed Amres's breach of contract claim against Mr. Muffoletto and the breach of contract claim, including possible references to unpleaded intentional interference with contractual relations theories, against T2 Financial with leave file a third amended Complaint.[27]

Mr. Muffoletto and T2 Financial moved to dismiss Amres's third amended Complaint. In response, Amres moved for leave to file a fourth amended Complaint.[28] We had an extensive oral argument with counsel on the motion to dismiss the third amended Complaint. We explained to Amres's counsel pleading requirements. We granted Mr. Muffoletto's and T2 Financial's Motion to dismiss the third amended Complaint, dismissing with prejudice as unopposed Amres's claims for breach of fiduciary duty and breach of a non-solicitation agreement against T2 Financial and Amres's intentional interference with contract claim against Mr. Muffoletto.[29] We dismissed without prejudice Amres's claims for breach of fiduciary duty against Mr. Muffoletto, breach of sections VI, VII, and VIII of a non-solicitation agreement by Mr. Muffoletto, and a intentional interference with employment agreements by T2 Financial.[30] We granted  Amres leave to file a fourth amended Complaint consistent with its obligations under Federal Rules of Civil Procedure 8 and 11, including being informed by our concerns with its earlier pleading of breaches of a non-solicitation agreement.[31]

Amres's fourth amended Complaint is now before us. Amres sues Mr. Muffoletto, T2 Financial, Timothy Johnson, and Anthony Grothouse asserting: (1) breach of fiduciary duty against Mr. Muffoletto; (2) tortious interference with contractual relations against T2 Financial, Mr. Johnson, and Mr. Grothouse; and (3) breach of the Sections VII and VIII of the non-solicitation agreement against Mr. Muffoletto.[32]

## II. Analysis

Mr. Muffoletto, T2 Financial, and Messrs. Johnson and Grothouse moved to partially dismiss the fourth amended Complaint.[33] Messrs. Johnson and Grothouse argue we lack personal jurisdiction over them as Ohio citizens allegedly trying to solicit employees from outside Pennsylvania and otherwise they cannot be jointly and severally liable for T2 Financial's alleged tortious interference earlier dismissed with prejudice, as unopposed by Amres.[34] Mr. Muffoletto argues the gist of the action doctrine bars Amres's breach of fiduciary duty claim and Amres fails to state a claim for breach of Section VIII of his Non-Solicitation Agreement.

T2 Financial argues Amres fails to state a claim against it for tortious interference with contractual relations and fails to plead sufficient facts to hold it jointly and severally liable with Messrs. Johnson and Grothouse. It also moves to strike paragraphs 47 and 94 seeking to hold T2 Financial jointly liable for Mr. Muffoletto's alleged breach of fiduciary duty to Amres and alleged breach of the Non-Solicitation Agreement as already dismissed with prejudice in our April 25, 2024 Order.

### A.  We dismiss some but not all claims against Mr. Muffoletto.

Amres asserts two claims against Mr. Muffoletto: breach of fiduciary duty and breach of the Non-Solicitation Agreement. We deny the motion to dismiss the breach of fiduciary duty claim. We grant the motion to dismiss the breach of Section VIII of the Non-Solicitation Agreement only. Mr. Muffoletto did not move to dismiss the breach of Section VII of the Agreement. The breach of Section VII will go forward.

#### 1.  The gist of the action doctrine does not bar a breach of fiduciary duty claim against Mr. Muffoletto for conduct while an Amres executive.

Amres challenges Mr. Muffoletto's conduct during his employment with it and not later.[35] Under Pennsylvania law, an employee as an agent of his employer owes his employer a duty of

loyalty.[36] A breach of the duty may be the basis of a tort claim. The duty of loyalty includes a "duty to refrain from competing with the principal and from taking action on behalf of, or otherwise assisting, the principal's competitors throughout the duration of the agency relationship, as well as a duty not to use property or confidential information of the principal for the agent's own purpose or those of a third party" and the employee may not "act[ ] for a person or entity whose interests conflict[ ] with [the employer]."[37]

The elements of a breach of fiduciary duty are: (1) the employee negligently or intentionally failed to act in good faith and solely for the benefit of the employer in all employment matters; (2) the employer suffered injury; and (3) the employee/agent's failure to act solely for the employer/principal's benefit is "a real factor in bring[ing] about" the injuries.[38]

Amres alleges Mr. Muffoletto breached his fiduciary duty to it by the following conduct during his employment with Amres causing it harm:

- "Obtained" two employees for Amres competitor T2 Financial;[39]

- Organized his own limited liability corporation, Recruiting Navigator LLC, to recruit mortgage sales professionals for T2 Financial and First National Bank of Nebraska and to received payments from T2 Financial for services he rendered to it;[40]

- Poached Amres employees Messrs. Morris and Gaddis and Mses. Webster and Gabler;[41]

- Acted as a "counselor" for Amres employees experiencing "pressures or difficulties" at Amres in an effort to identify disgruntled employees to "solicit away" from Amres;[42]

- Introduced Amres employees Messrs. Morris and Gaddis to "upper management" of T2 Financial and facilitated T2 Financial's contact with them.[43]

Mr. Muffoletto moves to dismiss the breach of fiduciary duty claim as barred by the gist of the action doctrine. Under Pennsylvania law, the gist of the action doctrine prohibits tort claims arising from a breach of contractual obligations.[44] If the facts of a claim establish the breached duty is one created by the terms of the parties' contract, that is, a specific promise to do something

a party would not ordinarily have been obligated to do but for the contract, we view the claim as a breach of contract.[45] If the facts of a claim establish a party's "violation of a broader social duty owed to all individuals … imposed by the law of torts," then the claim "must be regarded as a tort."[46] Simply because the parties have a contract does not render all claims for damages contractual.[47] If a contract "creates a relationship that in turn imposes a common–law duty, the contract is collateral to that common–law duty, and the gist-of-the-action doctrine does not apply."[48]

The Pennsylvania Superior Court recently held an employee owes his employer a duty "not to work as a corporate spy and recruiter for competitors, even without a written contract."[49] In *Bert Company v. Turk*, an insurance broker working for Bert Company also worked for a competitor as its "undercover servant" to destroy Bert Company's relationships with its customers and employees.[50] The broker left Bert Company with other employees for employment with the competitor hoping to bring their clients from Bert Company. Bert Company sued its former employee and others alleging its former broker employee breached his fiduciary duty and duty of loyalty. A jury found in favor of Bert Company. The former employee moved for judgment notwithstanding the verdict, arguing the breach of fiduciary duty claim is barred by the gist of the action doctrine. The trial court denied the motion, rejecting the former employee's gist of the action doctrine argument.

The Pennsylvania Superior Court affirmed the trial court's rejection of the gist of the action doctrine. The Pennsylvania Superior Court explained the former employee's conduct occurred while still employed, did not depend on the restrictive covenants he had with Bert Company, and conduct such as disclosing names of other employees willing to come with him to work for Bert

Company's competitor is wrongful regardless of whether he had a restrictive covenant proscribing the conduct.[51]

The holding in *Bert Company* informs our conclusion Mr. Muffoletto owed a common law duty of loyalty to Amres while employed there. He owed Amres this duty regardless of Non-Solicitation Agreement. We deny Mr. Muffoletto's motion to dismiss the fiduciary duty claim based on the gist of the action doctrine for his conduct taken while employed by Amres.

### 2.   We dismiss the breach of Section VIII of the non-solicitation agreement.

To sufficiently plead a claim for breach of contract under Pennsylvania law, Amres must allege facts showing: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages.[52] Amres must allege the essential terms of the contract it alleges Mr. Muffoletto breached.[53]

Amres now sues Mr. Muffoletto for breach of two obligations in the Non-Solicitation Agreement: (1) non-solicitation of Amres's employees in Section VII; and (2) non-solicitation of Amres's "business or customers" under Section VIII.[54] Amres alleges as a result of Mr. Muffoletto's breaches of the Agreement, it suffered damages in the loss of sales volume, market share, and lost profits.[55]

Mr. Muffoletto does ***not*** move to dismiss claims relating to the non-solicitation of Amres employees in violation of Section VII; he moves only to dismiss the claim relating to the non-solicitation of Amres's "business or customers" under Section VII.

Mr. Muffoletto in Section VIII agreed Amres's customer lists and "all information relating to" its customers are proprietary information and agreed "for a period of twelve months after the cessation of [his] Employment for any reason, whether with or without cause …, I shall not influence or attempt to influence customers of Amres to divert their business to any individual or

entity then in competition with Amres. I further and specifically promise and agree that, during the time period referred to in this Section 8, I will not disrupt, damage, impair, or interfere with the business of Amres by disrupting its relationships with customers, agents, representatives, referral sources … or vendors."[56]

Amres alleges Mr. Muffoletto breached this Section VIII by: "[c]ausing, encouraging, introducing Amres sales employees/agents, … to not only deflect themselves [sic] to [T2 Financial] but also to strongly suggest[], encourage[] them explicitly or implicitly, to take their Amres leads, current potential and existing customers, and open books of business to [T2 Financial] and other entities …."[57]

Mr. Muffoletto moved to dismiss the breach of contract claims under Rule 12(b)(6). Mr. Muffoletto objects to Amres's allegation at paragraph 91, asserted for the first time in the fourth amended Complaint and never pleaded in the four earlier iterations of Amres's complaints, including in the proposed fourth amended Complaint Amres attached to its Motion for leave to file a fourth amended Complaint.[58] Mr. Muffoletto takes particular issue with the allegation in paragraph 91 he "encouraged" and "introduced" Amres employees "some of whom are mentioned above herein" to "take their Amres leads, current potential and existing customers, and open books of business" to T2 Financial. Mr. Muffoletto asserts this allegation lacks a fact basis, Amres did not conduct "any inquiry into the truthfulness of it" and instead "invented [the allegation] from whole cloth to prevent dismissal of the claim in violation of Rule 11."[59]

Amres responds it states a claim for breach of Section VIII, citing its allegation Mr. Muffoletto attempted, four days after his separation from Amres, to recruit Amres employee Mr. Fogel. Amres argues an attempt to recruit Mr. Fogel violates Section VIII because it "disrupts" the relationship between it and Mr. Fogel.[60] The allegation Mr. Muffoletto attempted to recruit Amres

employee Mr. Fogel falls under the plain language of Section VII – not Section VIII – of the Non-Solicitation Agreement. Mr. Muffoletto did not move to dismiss Section VII which bars him from "raiding" Amres employees during his employment and for a twelve-month period after separation from Amres. If we accepted Amres's argument, we would run afoul of Pennsylvania's principles of contract interpretation we should attempt to construe a contract to give effect to all its provisions and must construe a contract so no provision is rendered meaningless.[61]

Amres fails to state a claim for breach of Section VIII of the Agreement. There are insufficient facts to state a claim for relief plausible on its face. A claim is facially plausible when the facts pleaded "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[62] When the "well-pleaded facts do not permit [us] to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – that the pleader is entitled to relief."[63] Here, we do not know when Mr. Muffoletto allegedly breached Section VIII which, by its terms, applied for a period of one year after Mr. Muffoletto's separation from employment with Amres. There is no allegation (after five attempts) Mr. Muffoletto—post-Amres employment—"influenc[ed] or attempt[ed] to influence customers of Amres to divert their business to any individual or entity then in competition with Amres" or "disrupt[ed], damage[d], impair[ed], or interfere[d] with the business of Amres by disrupting its relationships with customers, agents, representatives, referral sources … or vendors."[64] There is only a vague allegation Mr. Muffoletto "caus[ed], encourage[ed] [and] introduce[ed]" Amres employees at an unpleaded time to "deflect themselves" to T2 Financial—which is not a promise Mr. Muffoletto made in Section VIII of the Agreement—and "strongly suggested [and] encouraged" unidentified Amres employees at some unidentified time "explicitly or implicitly to take their Amres leads," customers, and open books of business to T2 Financial. Amres fails to plausibly state a claim for

breach of Section VIII of the Agreement. We allow Amres's claim for breach of Section VII of the Non-Solicitation Agreement against Mr. Muffoletto to proceed.

**B.  We lack personal jurisdiction over Messrs. Johnson and Grothouse.**

Ohio citizens Messrs. Grothouse and Johnson move to dismiss the tortious interference claims against them for lack of personal jurisdiction. We awaited some evidence from Amres. Nothing came. We agree with Messrs. Grothouse and Johnson and dismiss them for lack of personal jurisdiction.

When considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), we take the allegations of the complaint as true.[65] But once a defendant raises a jurisdictional defense, the plaintiff has the burden of proving "by affidavits or other competent evidence" jurisdiction is proper.[66] The plaintiff meets its burden and "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."[67] If the plaintiff satisfies the prima facie case, the burden then shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[68]

As a federal court sitting in diversity, we may exercise personal jurisdiction over a non-resident defendant to the extent allowed under the law of the forum state.[69] Pennsylvania's long-arm statute provides for jurisdiction "based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States."[70] We ask whether, under the Due Process Clause, Messrs. Johnson and Grothouse have "certain minimum contacts with … [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[71]

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction.[72] Amres only argues we may enjoy specific personal jurisdiction over Messrs. Johnson and Grothouse.[73] We conclude we lack specific personal jurisdiction over Messrs. Johnson and Grothouse.

The Supreme Court instructs specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."[74] There are two prongs to the specific jurisdiction analysis: (1) there must be "purposeful availment," meaning "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state"; and (2) the contacts must "give rise to" or "relate to" plaintiff's claims.[75]

Specific jurisdiction may be exercised over a defendant's intentional torts where its actions are "expressly aimed" at the forum under the "effects test" articulated by the Supreme Court in *Calder v. Jones.*[76] Amres alleges Messrs. Johnson and Grothouse tortiously interfered with the employment contracts of Amres employees Mr. Muffoletto and Messrs. Gaddis and Morris and Mses. Webster and Gabler. Under the *Calder* "effects test" Amres must show: (1) Mr. Grothouse and Mr. Johnson "committed an intentional tort"; (2) Amres "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) Mr. Grothouse and Mr. Johnson "expressly aimed [their] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."[77]

We evaluate the "expressly aimed" element first. "Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements."[78] Amres does not sufficiently allege Messrs. Grothouse or Johnson "expressly aimed" their interference at Pennsylvania. To establish Messrs. Grothouse or Johnson "expressly aimed" their alleged intentionally tortious

conduct at Pennsylvania, Amres must allege facts to demonstrate each or both "expressly aimed [their] tortious conduct at the forum to make the forum the focal point of the tortious activity."[79]

Amres alleges Messrs. Grothouse and Johnson knew Amres employed Mr. Muffoletto, Messrs. Morris and Gaddis and Mses. Webster and Gabler and intentionally interfered with their employment contracts by recruiting those employees from Amres.[80]Amres is a Pennsylvania-based company.[81] Mr. Grothouse and Mr. Johnson live in Ohio.[82] We require more than interference with a Pennsylvania company's contracts to establish personal jurisdiction.[83] Amres must plead Mr. Grothouse and Mr. Johnson intended to harm Amres in Pennsylvania.[84]

We evaluated a similar issue in *M3 USA Corporation v. Hart.*[85] M3 USA, a company headquartered in Pennsylvania and incorporated in Delaware, sued its former employee and her new employer, Atlas, for tortious interference with employees' contracts.[86] M3 alleged Atlas, headquartered in Georgia and incorporated in Delaware, induced two of M3's former employees to breach their employment contracts with M3. One of the "poached" employees lived in New Jersey and the other lived part-time in Florida and part-time in Oklahoma. They worked for a Pennsylvania company but neither lived in Pennsylvania. Atlas moved to dismiss for lack of personal jurisdiction. We declined to exercise personal jurisdiction over the tortious interference claims against Atlas for its recruitment of out of state M3 employees.[87]

We relied on Judge McHugh's thoughtful 2016 reasoning in *Numeric Analytics.* We are again guided by his reasoning. In *Numeric Analytics*, an employer alleged its former president "engaged in [t]ortious [i]nterference by inducing the [employees] to violate their employment contracts with [their Pennsylvania employer]."[88] The former president lived in Colorado and the employees he "poached" lived in Ohio, Wisconsin, and Virginia. Judge McHugh found he could exercise personal jurisdiction over the president based on his duties as a corporate officer, but

expressed doubt about whether contacts with non-Pennsylvania residence alone satisfied the *Calder* effects test.[89]

Judge Marston came to a similar conclusion in *Abira Medical Laboratories, LLC v. Karim*.[90] Judge Marston concluded she could exercise personal jurisdiction over one tortious interference claim and declined jurisdiction over another. Genesis, a Pennsylvania company incorporated in New Jersey, sued Defendant Karim, an individual in Missouri, for tortious interference with two types of contractual relationships.

Ms. Karim's husband previously owned a medical testing company competing with Genesis. The business failed, and Ms. Karim started her own business. She recruited three Genesis employees to work for her new company. Ms. Karim induced the employees to share confidential information about a Genesis client based in Texas, Redwood Lab Services. Genesis alleged Karim tortiously interfered with its employment contracts and its client contract with Redwood. Judge Marston exercised personal jurisdiction over the tortious interference with employment contract claims, finding Ms. Karim "expressly aimed" the interference at Pennsylvania because she contacted Genesis employees based in Pennsylvania via email.[91]

But Judge Marston declined to exercise personal jurisdiction over the tortious interference claim involving the Genesis-Redwood contract, reasoning "[e]ven though Genesis's headquarters are in Pennsylvania, its records are maintained in Pennsylvania, and any alleged harm to Genesis is being felt in Pennsylvania, Redwood is based in Texas, and [Ms.] Karim's alleged interference with the Redwood contract occurred in Texas, not Pennsylvania."[92]

Amres alleges we may exercise jurisdiction because Messrs. Grothouse's and Johnson's "commission of a tort in the forum."[93] But Amres does not plead facts connecting their actions to Pennsylvania employees. Nor does Amres plead facts about actions taken by them in Pennsylvania.

Amres does not plead they contacted employees in Pennsylvania. Amres pleads Messrs. Johnson and Grothouse recruited four named employees from Amres: Michael Muffoletto, Matthew Gaddis, Peter Morris, and Nicole Webster.[94] It pleads Messrs. Johnson and Grothouse induced Kelly Gabler to leave Amres but does not allege where she worked or where Messrs. Johnson and Grothouse sought to recruit her.[95] Amres pleads T2 Financial recruited Georgian Mr. Muffoletto.[96] Amres pleads Messrs. Johnson or Grothouse flew Peter Morris and Nicole Webster to Ohio to recruit them.[97] It does not plead where Mr. Morris or Ms. Webster worked or lived. Amres alleges T2 Financial recruited Mr. Gaddis but we do not have an allegation of where this occurred.[98] But we have no connection to Pennsylvania other than Amres is here and suffered injury here. Amres does not plead these employees worked in Pennsylvania. Amres also does not plead Messrs. Johnson and Grothouse recruited these employees in Pennsylvania. There is no nexus between Messrs. Johnson's and Grothouse's conduct in soliciting Amres's employees with the Commonwealth.

These facts parallel those we encountered in *M3 USA* where we found a lack of personal jurisdiction when a non-forum company tortiously interfered with a Pennsylvania company's employees outside the state. Amres does not plead Messrs. Grothouse or Johnson expressly aimed their tortious conduct at any employee in Pennsylvania as required by the *Calder* effects test.

We lack specific personal jurisdiction over the intentional tort claims against Messrs. Johnson and Grothouse and dismiss them with prejudice.[99]

### C.  We dismiss claims against T2 Financial.

T2 Financial moves to dismiss the claims against it arguing Amres (1) fails to state a claim for tortious interference with contractual relations; (2) fails to plead sufficient facts to hold it jointly and severally liable with Messrs. Johnson and Grothouse; and (3) and paragraphs 47 and 94

seeking to hold T2 Financial jointly liable for Mr. Muffoletto's alleged breach of fiduciary duty to Amres and alleged breach of the Non-Solicitation Agreement must be stricken as already dismissed with prejudice in our April 25, 2024 Order. We strike paragraphs 47 and 94 and dismiss claims against T2 Financial.

> **1. We strike paragraphs 47 and 94 alleging T2 Financial's joint and several liability with Mr. Muffoletto for his alleged breach of fiduciary duty and alleged breach of the Non-Solicitation Agreement.**

Amres alleges in paragraphs 47 and 94 of the fourth amended Complaint T2 Financial is jointly and severally liable with Mr. Muffoletto for his alleged breach of his fiduciary duty to Amres and alleged breach of Section VIII of his Non-Solicitation Agreement with Amres.

Under Pennsylvania law, joint and several liability is "a principle of recovery for an indivisible injury caused by multiple tortfeasors" and "lies at the very heart of the common law of tort, … and … Pennsylvania's statutory law."[100] A joint tortfeasor whose tortious conduct is the legal cause of a plaintiff's injury bears liability for the full amount of damages if its conduct, along with the tortious conduct of other tortfeasors, caused an indivisible harm.[101] Joint and several liability "allows an injured party to recover an entire judgment from any one responsible tortfeasor."[102]

T2 Financial cannot be a "responsible tortfeasor" because Amres voluntarily withdrew claims against it for breach of fiduciary duty and breach of Mr. Muffoletto's Non-Solicitation Agreement. We held extensive oral argument on Amres's Motion for leave to file a fourth amended Complaint. Amres withdrew its claims for breach of fiduciary duty and breach of the Non-Solicitation Agreement against T2 Financial. We dismissed with prejudice the withdrawn claims against T2 Financial.[103] We granted Amres leave to file a fourth amended Complaint "with claims not dismissed with prejudice and mindful of its obligations under Rules 8 and 11 including being

informed by our concerns with its earlier pleading of breaches of sections 6 and 8 in the third amended Complaint."[104] Amres cannot now, at paragraphs 47 and 94, seek to hold T2 Financial "jointly and severally liable" with Mr. Muffoletto on claims already dismissed against T2 with its consent.[105]

Amres concedes we dismissed the breach of fiduciary duty and breach of Mr. Muffoletto's Non-Solicitation Agreement against T2 Financial, but it argues T2 Financial is still liable under an aiding and abetting a breach of fiduciary duty theory and an agency theory under Pennsylvania law. The problem with this argument is twofold: Amres did not plead an aiding and abetting claim or an agency theory against T2 Financial in its fourth amended Complaint.[106] We also decline Amres's request to amend its complaint for the sixth time or to reconsider our order dismissing its breach of fiduciary duty and breach of the Non-Solicitation Agreement it voluntarily withdrew at oral argument.

We strike paragraphs 47 and 94 of the fourth amended Complaint attempting to impose joint and several liability.

### 2. We dismiss Amres's intentional interference with contractual relations claim against T2 Financial.

Amres claims T2 Financial tortiously interfered with its contractual relations with its employees Mr. Muffoletto, Mr. Morris and Ms. Webster, Mr. Gaddis, and Ms. Gabler. T2 Financial moves to dismiss the tortious interference claim arguing Amres cannot establish an absence of privilege because there is a privilege to compete by recruiting employees to work for it.

Amres has in five iterations of its complaint, alleged T2 Financial intentionally interfered with its contractual relationships with Mr. Muffoletto and Amres employees Mr. Fogel and "others."[107] At oral argument on Mr. Muffoletto's and T2 Financial's motion to dismiss the third

amended Complaint, we told Amres it must separate its tort claims from its breach of contract claims by separating out the existing contractual relationships with, for example, Mr. Muffoletto, and prospective contractual relationships, for example, with clients.[108] Amres returned with its fourth amended Complaint, this time alleging T2 Financial interfered with Mr. Muffoletto's "restrictive covenants" and interfered with unpleaded contractual relationships between Amres and its employees Mr. Fogel, Messrs. Gaddis and Morris, and Mses. Webster and Gabler. Amres's now fifth attempt falls short of the pleading standard to state a claim for intentional interference with contractual relations.

Under Pennsylvania law, the elements of intentional interference with contractual relations, a tort, are: "(1) the existence of a contract or of a prospective contractual relation[ship] between the third person and the plaintiff; (2) an act for the purpose or intent to harm plaintiff by inducing a breach of contract or refusal to deal, or preventing a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the actor ... and (4) the occurrence of actual harm or damage to plaintiff as a result of the actor's conduct."[109]

Amres claims T2 Financial intentionally interfered with Mr. Muffoletto's employment contract with Amres by alleging:

- T2 Financial knew or should have known of Mr. Muffoletto's employment with Amres;[110]

- T2 Financial had "actual knowledge" of Mr. Muffoletto's restrictive covenants under the terms of his employment with Amres.[111]

Amres fails to sufficiently plead T2 Financial intentionally interfered with Mr. Muffoletto's employment agreement or restrictive covenants with Amres. Amres fails entirely to identify the contract T2 Financial interfered with; is it Mr. Muffoletto's employment contract or is it Mr. Muffoletto's Non-Solicitation Agreement? Assuming Amres intended to allege interference

with both contracts, it fails to allege T2 Financial's purpose or intent to harm Amres by inducing Mr. Muffoletto to breach his contract(s) with Amres and fails to allege the absence of privilege or justification. We dismiss an intentional interference claim against T2 Financial with regard to Mr. Muffoletto.

Amres also claims T2 Financial intentionally interfered with the employment contracts of Amres employees Mr. Morris and Ms. Webster, Mr. Gaddis, and Ms. Gabler by alleging:[112]

- Timothy Johnson called Mr. Morris on May 9, 2023 to try to recruit him and, on May 24 and 25, 2023, T2 Financial paid to fly Mr. Morris and Ms. Webster to meet with its executives and management;[113]

- Messrs. Grothouse and Johnson continued to "aggressively pursue" Mr. Morris and Ms. Webster by meeting with them over Zoom on May 30 and June 27, 2023, "determined to do whatever it took" for the two to leave Amres to work for T2 Financial;[114]

- Messrs. Grothouse and Johnson lured Mr. Gaddis away from Amres, encouraging him to take Amres customers and his book of business to T2 Financial;[115]

- T2 Financial knew Messrs. Gaddis and Morris and Ms. Webster had "mutually beneficial agreements" with Amres;[116]

- T2 Financial "solicited" at least ten Amres employees, including Messrs. Gaddis, Morris, and Mses. Webster and Gabler, and other unidentified employees.[117]

Amres does not identify the contracts T2 Financial allegedly interfered. Amres alleges Messrs. Johnson and Grothouse knew Amres employed Messrs. Morris and Gaddis and Mses. Webster and Gaddis.[118] There are no allegations these employees had contractual obligations to Amres such as non-compete or confidentiality obligations. A competitor who intentionally causes another's employee "not to continue an existing contract terminable at will" does not interfere improperly with the relationship if: "(a) the relation concerns a matter involved in the competition between the actor and the other; (b) the actor does not employ wrongful means; (c) his action does

not create or continue an unlawful restraint of trade; and (d) his purpose is at least in part to advance his interest in competing with the other."[119]

But a competitor's privilege would not shield T2 Financial from intentional interference with an employee bound by a covenant not to compete.[120] The only Amres employee alleged to have a covenant not to compete is Mr. Muffoletto. Section VI of Mr. Muffoletto's Non-Solicitation Agreement contains a non-competition provision. But Amres does not identify Section VI of the Agreement as the subject of T2 Financial's interference. And we specifically addressed Section VI with counsel at our April 25, 2024 oral argument. Amres filed its fourth amended Complaint and did not allege T2 Financial interfered with Mr. Muffoletto's covenant not to compete in Section VI. Amres alleges only T2 Financial had "actual knowledge" of Mr. Muffoletto's restrictive covenants under the terms of his employment with Amres and does not allege the element of intent and absence of privilege.

The deficiency with other Amres employees such as Messrs. Morris and Gaddis and Mses. Webster and Gabler is Amres fails to plead the contracts T2 Financial interfered with; the pleading seems to suggest an employment relationship of Amres's at-will employees and there are no allegations of non-compete agreements as to these employees. Amres also fails to allege T2 Financial's purpose or intent to harm Amres by inducing its employees to breach their contracts (if any) and the absence of privilege or justification. We dismiss Amres's intentional interference with contractual relations claim against T2 Financial. Given our conclusion, we need not address T2 Financial's argument it is not jointly and several liable with Messrs. Grothouse and Johnson.

## III.  Conclusion

We deny Mr. Muffoletto's motion to dismiss the breach of fiduciary duty claim and will allow it to go forward seeking damages arising from Mr. Muffoletto's alleged breaches of fiduciary

duty while employed at Amres. Amres may also proceed on a breach of Section VII of the Non-Solicitation Agreement against Mr. Muffoletto as he does not move to dismiss it.

We grant Mr. Muffoletto's motion to dismiss the breach of Section VIII of the Non-Solicitation Agreement for failing to state a claim. We grant Messrs. Johnson's and Grothouse's Motion to dismiss them from this action for lack of personal jurisdiction. We grant T2 Financial's Motion to dismiss the intentional interference with contractual relations claim against it.

The parties will now complete discovery only on the breach of fiduciary duty claim against Mr. Muffoletto for conduct during his employment with Amres and the breach of Section VII of the Non-Solicitation Agreement against Mr. Muffoletto. We dismiss Messrs. Johnson and Grothouse with prejudice. We dismiss the intentional interference with contractual relations claim against T2 Financial and Messrs. Johnson and Grothouse. We dismiss T2 Financial with prejudice after Amres has not plead claims against it after several tries.

---

[1] ECF No. 30 ¶ 13.

[2] *Id.* ¶ 22.

[3] *Id.* ¶ 19.

[4] *Id.* ¶ 17.

[5] *Id.* ¶¶ 21, 86.

[6] ECF No. 30–1 at 4–5. In Sections VII and VIII, Mr. Muffoletto agreed:

> SECTION VII. Non-Solicitation of Employees
>
> During the period of my Employment and for a period of twelve (12) months after the cessation of my Employment for any reason, whether with or without cause (or if this period of time shall be unenforceable by law, then for such period as shall be enforceable), I shall not disrupt, damage, impair, or interfere with the business of AMRES by interfering with or "raiding" AMRES employees by directly or indirectly soliciting AMRES employees to work for any individual or entity then in competition with AMRES.

SECTION VIII. Non-Solicitation of Business or Customers

AMRES considers and I acknowledge that AMRES's customer lists and all information relating to AMRES's customers are Proprietary Information. I further understand that the business requirements, likes and dislikes of AMRES's customers are intrinsic to the value of this Proprietary Information. I therefore agree that for a period of twelve months after the cessation of my Employment for any reason, whether with or without cause (or if this period shall be unenforceable by law, then for such period as shall be enforceable), I shall not influence or attempt to influence customers of AMRES to divert their business to any individual or entity then in competition with AMRES. I further and specifically promise and agree that, during the time period referred to in this Section 8, I will not disrupt, damage, impair, or interfere with the business of AMRES by disrupting its relationships with customers, agents, representatives, referral sources (including Realtors and other referral sources in company's database), or vendors.

[7] ECF No. 30 ¶ 28.

[8] *Id.* ¶¶ 31, 37.

[9] *Id.* ¶¶ 29–30. The proper name for the corporate entity is T2 Financial, LLC but the parties refer to it as Revolution Mortgage. We refer to the proper name T2 Financial.

[10] *Id.* ¶ 37.

[11] *Id.* ¶ 35.

[12] *Id.* ¶¶ 36–37.

[13] *Id.* ¶¶ 4, 36–37.

[14] *Id.* ¶¶ 38–42.

[15] *Id.* ¶ 43.

[16] *Id.* ¶ 5; ECF No. 10.

[17] ECF No. 30 ¶ 51.

[18] *Id.* ¶ 52.

[19] *Id.* ¶ 53.

[20] *Id.* ¶¶ 54-59.

[21] *Id.* ¶ 60.

[22] *Id.* ¶¶ 61–65.

[23] *Id.* ¶¶ 68–72, 78–81.

[24] *Id.* ¶¶ 69, 71–72.

[25] ECF No. 1.

[26] ECF No. 13.

[27] *Id.*

[28] ECF Nos. 25, 26.

[29] ECF No. 29.

[30] *Id.*

[31] *Id.*

[32] ECF No. 30.

[33] ECF No. 35. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs*., 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that …

'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[34] Amres declined an opportunity to engage in personal jurisdiction discovery.

[35] Amres clarified it seeks to hold Mr. Muffoletto liable for breach of fiduciary duty "for violative conduct during his employment …" and not his conduct after his June 19, 2024 separation from Amres. ECF No. 54–1 at 14.

[36] *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 667 (E.D. Pa. 2014).

[37] *Id.* (citations omitted).

[38] *Id.* (citation omitted).

[39] ECF No. 30 ¶¶ 29–30.

[40] *Id.* ¶¶ 31–37, 46.

[41] *Id.* ¶ 37. Amres alleges Mr. Muffoletto "even attempted to recruit" Amres employee and attorney Roman Fogel in support of the breach of fiduciary duty claim. *Id.* ¶ 36. Amres does not plead when Mr. Muffoletto attempted to recruit Mr. Fogel. *Id.* But Amres alleges in support of its breach of contract claim against Mr. Muffoletto, the attempt to recruit Mr. Fogel occurred on June 23, 2023, just four days ***after*** his separation from Amres. *Id.* ¶ 88. Amres clarified, in response to Mr. Muffoletto's motion, its breach of fiduciary duty claim is based only on "violative conduct during his employment" and "for conduct after June 19th 2024 [sic], he is held liable only under breach of [the] non-solicitation agreement." ECF No. 54-1 at 14. To the extent paragraph 36 attempts to serve as a basis for Mr. Muffloletto's alleged breach of fiduciary duty, we will not consider it as Amres elsewhere specifies Mr. Muffoletto's conduct with regard to Mr. Fogel occurred after employment and now clarifies the breach of fiduciary duty pertains only to conduct while employed at Amres.

[42] *Id.* ¶¶ 44–45.

[43] *Id.* ¶ 89. We note Amres includes this specific allegation in the breach of contract claim against Mr. Muffoletto, specifically alleging this conduct occurred during Mr. Muffoletto's employment with Amres. *Id.* We assume this conduct is more properly considered as a basis for Amres's breach of fiduciary duty claim, not a breach of the Non-Solicitation Agreement for post-separation conduct.

[44] *Bert v. Turk*, 257 A.3d 93, 109 (Pa. Super. Ct. 2021), *aff'd* 298 A.3d 44 (Pa. 2023).

[45] *Id.* (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014)).

[46] *Id.*

[47] *Id.* at 109–10 (citing *Bruno*, 106 A.3d at 69).

[48] *Id.* at 110 (citing *Bruno*, 106 A.3d at 70–71).

[49] *Id.* at 111.

[50] *Id.* at 101.

[51] *Id.* at 110.

[52] *Doe v. Univ. of Sciences*, 961 F.3d 203, 211 (3d Cir. 2020).

[53] *Campitelli v. Plymouth Rock Assurance Corp.*, No. 22-4422, 2023 WL 5111971, at *6 (E.D. Pa. Aug. 8, 2023).

[54] ECF No. 30–1 at 4, Sections VII, VIII.

[55] ECF No. 30 ¶¶ 92–93.

[56] ECF No. 30–1 at 4–5.

[57] ECF No. 30 ¶ 91.

[58] *Compare* ECF No. 26–5 ¶¶ 81–88, 42–44 (misnumbered) *with* ECF No. 30 ¶¶ 85–94.

[59] ECF No. 35–2 at 14–15.

[60] ECF No. 54–1 at 12.

[61] *Trustmark Servs. Co. v. Feeney*, --- F. Supp. 3d ---, No. 20-3686, 2024 WL 869476, *8 (E.D. Pa. Feb. 28, 2024) (citations omitted).

[62] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[63] *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

[64] ECF No. 30–1 at 4, Section VIII.

[65] *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

[66] *Id.* (citations omitted).

[67] *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotations omitted) (citation omitted).

[68] *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986)).

[69] *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[70] 42 PA. CONS. STAT. ANN. § 5322(b).

[71] *O'Connor*, 496 F.3d at 316–17 (quoting *Int'l Shoe Co. v. Washington*, 325 U.S. 310, 316 (1945)).

[72] *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984)).

[73] ECF No. 54-1 at 4–7.

[74] *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021).

[75] *Hepp v. Facebook*, 14 F.4th 204, 207–08 (3d Cir. 2021) (citing *Ford Motor Co.*, 592 U.S. at 358–59).

[76] 465 U.S. 783 (1984).

[77] *Calder*, 465 U.S. at 789.

[78] *Marten v. Godwin*, 499 F.3d 290, 297–298 (3d Cir. 2007) (citing *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)).

[79] *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d. Cir. 2020) (internal quotations omitted) (quoting *IMO Industries, Inc.*, 155 F.3d at 265-66).

[80] ECF No. 30 ¶ 75.

[81] *Id.* ¶ 1.

[82] *Id.* ¶ 6.

[83] *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 358 (E.D. Pa. 2016).

[84] *Danziger & De Llano, LLP*, 948 F.3d at 130 (citing *IMO Industries, Inc.*, 155 F.3d at 265–66).

[85] 516 F. Supp. 3d 476, 499 (E.D. Pa. 2021).

[86] *Id.*

[87] *Id.* at 500–501.

[88] *Numeric Analytics*, 161 F. Supp. 3d at 358.

[89] *Id.*

[90] *Abira Med. Lab'ys, LLC v. Karim*, No. 20-4317, 2022 WL 44051 (E.D. Pa. Jan. 5, 2022) (Abira Medical Laboratories, LLC conducted business under the name Genesis).

[91] *Id.* at *5.

[92] *Id.* at * 6.

[93] ECF No. 30 ¶ 16.

[94] *Id.* ¶¶ 7–10, 16.

[95] *Id.* ¶¶ 37, 56, 79.

[96] *Id.* ¶ 75.

[97] *Id.* ¶¶ 16, 52.

[98] *Id.* ¶ 70.

[99] Even if we had specific personal jurisdiction over Messrs. Johnson and Grothouse, Amres fails to state a claim for intentional interference with existing contractual relations. Under Pennsylvania law, the elements of the tort are: "(1) the existence of a contract or of a prospective contractual relation[ship] between the third person and the plaintiff; (2) an act for the purpose or intent to harm plaintiff by inducing a breach of contract or refusal to deal, or preventing a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the actor ... and (4) the occurrence of actual harm or damage to plaintiff as a result of the actor's conduct." *Salsberg v. Mann*, 310 A.3d 104, 110, n.5 (Pa. 2024) (internal quotations omitted) (quoting *Glenn v. Point Park College*, 272 A.2d 895 (Pa. 1971)). Amres fails to plead Mr. Johnson's or Mr. Grothouse's purpose or intent to harm Amres by inducing a breach of Amres' employment contracts with its employees. We also reject Amres's attempt to assert in its opposition Messrs. Johnson and Grothouse intentionally interfered with Amres's ***prospective*** contractual relations. Amres did not plead a prospective contractual relationship. Amres cannot amend its pleading through its brief in opposition to the motion to dismiss. *Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (citations omitted).

[100] *Spencer v. Johnson*, 249 A.3d 529, 559 (Pa. Super. Ct. 2021) (quoting *Carrozza v. Greenbaum*, 916 A.2d 553, 565 (Pa. 2007)).

[101] *Bert Company*, 298 A.3d at 62, n. 29 (citing *Harsh v. Petroll*, 887 A.2d 209, 211 & nn. 4, 5, 6, (Pa. 2005)).

[102] *AAA Mid-Atlantic Ins. Co. v. Ryan*, 84 A.3d 626, 101–02 (Pa. 2014).

[103] ECF No. 29 ¶ 1.a.

[104] *Id.* ¶ 2.

[105] ECF No. 30 ¶¶ 47, 94. We note joint and several liability is a concept in tort, not contract. We do not see how T2 Financial could be jointly and severally liable for a breach of the Non-Solicitation Agreement.

[106] Amres rests on a 1968 Pennsylvania Supreme Court analysis in *Onorato v. Wissahickon Park, Inc.*, 244 A.2d 22 (Pa. 1968). The case is inapposite. Plaintiffs in *Onorato* sought a cancellation of a deed based on an allegation the Defendants acted as Plaintiffs' agents and fraudulently and in breach of their fiduciary duty arranged a real estate sale at an inadequate price. It is a case by a principal against his agent in a dual agency situation. The case stands for the not so unusual proposition "no man can serve two masters" under agency law. We do not see how this case establishes T2 Financial's liability for Mr. Muffoletto's alleged breach of fiduciary duty.

[107] *See* Complaint (ECF No. 1-7); first amended Complaint (ECF No. 1-9); second amended Complaint (ECF No. 6-6); third amended Complaint (ECF No. 21); and fourth amended Complaint (ECF No. 30).

[108] ECF No. 22, N.T. at 32–34.

[109] *Salsberg,* 310 A.3d at 110, n.5 (quoting *Glenn*, 272 A.2d 895).

[110] ECF No. 30 ¶ 75.

[111] *Id.* ¶ 76.

[112] There are no specific allegations with regard to Ms. Gabler.

[113] ECF No. 30 ¶¶ 51–52.

[114] *Id.* ¶¶ 54–58.

[115] *Id.* ¶ 71.

[116] *Id.* ¶ 77.

[117] *Id.* ¶ 78.

[118] *Id.* ¶ 56.

[119] *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 215 (3d Cir. 2009) (quoting Restatement (Second) of Torts § 768).

[120] *Schuylkill Valley Sports, Inc. v. Corporate Images Co.*, No. 20-2332, 2020 WL 3167636, at *12 (E.D. Pa. June 15, 2020) (quoting *Symphony Health Sols. Corp. v. IMS Health, Inc.*, No. 13-4290, 2014 WL 4063360, at *2 (E.D. Pa. Aug. 15, 2014)).